**UNITED STATES of America**

**v.**

**John LITTLEJOHN, Defendant.**

**No. 65–CR–509.**

United States District Court
E. D. New York.

Oct. 31, 1966.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for United States, George L. Barnett, Asst. U. S. Atty., of counsel.

Anthony F. Marra, New York City, for defendant, Richard I. Rosenkranz, Brooklyn, N. Y., of counsel.

BARTELS, District Judge.

In this case the defendant has been indicted on two counts for unlawfully possessing and transporting six gallons of corn whisky in containers without the necessary tax stamps, in violation of the Internal Revenue Laws, 26 U.S.C.A. §§ 5205(a) (2) and 5604(a) (1), which allegedly occurred on June 26, 1965. He was apprehended and the containers seized in his automobile.

The facts leading up to the seizure and arrest are predicated upon the testimony of United States Treasury Agents of the Alcohol and Tobacco Division, Donald Zimmerman and Charles Sammis, whose testimony has been accepted by the Court. Donald Zimmerman testified as follows:

He received information from a reliable informer that on June 26, 1965 the defendant, who lived at 387 Williams Avenue, Brooklyn, New York, would transport a quantity of non-taxpaid distilled spirits in a 1959 white Ford sedan, bearing New York license number NY 5002. The informer described the defendant as a light complected Negro, about Zimmerman's height, stocky, who would be wearing a white straw hat. He had told Zimmerman about a year before that the defendant had been active in the illicit liquor traffic. This informer was known to Zimmerman for approximately 2½ years prior to June 26, 1965, during which time Zimmerman had found him thoroughly reliable and accurate. In fact, Zimmerman had been in contact with him at least 100 times and had always found him reliable in his statements. Based upon information received from the informer, Zimmerman had made seven or eight arrests, of which on June 26, 1965 two had resulted in convictions and the remainder were then pending for disposition. After receipt of this information Zimmerman checked with the New York authorities and found that license plate number NY 5002 belonged to a white Ford sedan registered in the name of the defendant, whose address was listed as 387 Williams Avenue, Brooklyn.

Accordingly, about 7 P.M. on June 26, 1965 he and Sammis proceeded to this address and located a white Ford sedan with this registration number near the premises and placed it under observation. Shortly before 8 P.M. Zimmerman saw a man fitting the informer's description with a white straw hat enter the sedan with a woman and two children and drive about two blocks to the corner of Dumont and Georgia Avenues, parking

on Dumont Avenue near the corner of the intersection. Zimmerman and Sammis having followed, parked their car about a block away on the opposite side of Dumont Avenue near Sheffield Avenue, from which vantage point they had a direct view of Littlejohn's parked sedan. Defendant, the woman and one child left the sedan and disappeared in a three-story building on Dumont Avenue with a store on the ground floor and apartments above. Thereafter the defendant reappeared and disappeared in the doorway of the building several times and finally came out about 15 minutes later (it being then about 8:15 P.M.), unlocked the trunk of the sedan, opened it slightly, left it unlocked and again disappeared in the building. He then returned carrying in his two hands a carton which appeared to be heavy enough to cause defendant to hunch over as he carried it to the trunk of the sedan. This carton was about 24″ long, 18″ wide and 12″ high and was partially covered with a cloth. As he reached the trunk, the boy with him lifted the lid of the trunk and the defendant thereupon placed the carton in the trunk. During this entire period the sedan and the doorway were under continuous surveillance by the agents. Prior to June 26, 1965 Zimmerman had seen cartons of this size and shape containing twelve Mason jars hundreds of times, testifying that they were used almost exclusively in the illicit liquor trade.

After the trunk of the sedan was closed, the defendant and his passengers entered the sedan and drove off with Zimmerman and Sammis following. After the defendant had turned down on Williams Avenue and approached Belmont Avenue, Zimmerman and Sammis pulled alongside of the defendant's sedan and Sammis showed his badge and both Zimmerman and Sammis directed the defendant to pull over to the curb, which he did. Zimmerman then approached the sedan from the driver's side, showing his badge, while Sammis approached it on the passenger side, also showing his badge. After showing the defendant his credentials Zimmerman asked the defendant to step out and come to the rear of the sedan. He did not purport to arrest the defendant at that time. Neither Zimmerman nor Sammis showed their guns or attempted to frisk the defendant. When the defendant, Zimmerman and Sammis reached the back of the sedan, Zimmerman asked the defendant what he had in the trunk, to which the latter replied "A case of whisky". Zimmerman then asked the defendant to open the trunk, whereupon Zimmerman found therein a carton containing twelve ½ gallon jars of distilled spirits which he tested by smell and taste. It was conceded that there were no tax stamps on any of the jars as required by law. Zimmerman then seized the carton, placed the defendant under arrest and advised him of his constitutional rights. At no time prior thereto was the defendant so advised.

Sammis' testimony was as follows: He was with Zimmerman, who was in charge of the investigation, when the latter proceeded to 387 Williams Avenue, Brooklyn on June 26, 1965, about 7 P.M. He confirmed Zimmerman's observations with respect to the surveillance of the defendant and the white Ford sedan, including the defendant's activities at the time he placed in the trunk of the sedan on Dumont Avenue near Georgia Avenue the carton covered partially with cloth. While he received no information from the confidential informer, whom he stated dealt exclusively with Zimmerman, he added that during the time the defendant was parked on Dumont Avenue Sammis observed the defendant carrying the carton to the sedan through binoculars and saw on the carton the word "Ball", which Sammis said advertised Ball, the manufacturer of Mason jars of the type most frequently used in the illicit liquor traffic.

The defendant now moves, pursuant to Rule 41(e), Fed.Rules Crim.Proc., 18 U.S.C.A., to suppress as evidence the carton containing the Mason jars of nontaxpaid distilled spirits seized in the trunk of the sedan, on the ground of

unlawful search and seizure, allegedly in violation of the Fourth Amendment of the Constitution. While not stated in the motion papers, he indicated upon argument that he also moved to suppress any statements made in connection with the seizure, allegedly in violation of the Fifth and Sixth Amendments of the Constitution.

### Time of Arrest

 Since the agents had no warrant for the search and seizure [1], the existence of probable cause becomes of paramount importance. In an effort to demonstrate that no probable cause existed before the arrest, the defendant attempted to pinpoint the time of the arrest at the moment when the agents ordered him to pull his sedan to the curb [2]. The Government, on the other hand, claims that the arrest did not occur until after the agents seized the non-taxpaid distilled spirits in the trunk of defendant's sedan. Defendant's contention is apparently predicated upon the assumption that a legal search and seizure could not have occurred unless it was an incident to a prior legal arrest. This is untrue. In a case involving contraband articles such as non-taxpaid distilled spirits, the seizure and forfeiture of which is authorized by statute (26 U.S.C.A. § 5640), a search may be made without a warrant and without a preceding arrest if supported by probable cause. Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. Hence, it is unnecessary in this case to decide when the arrest took place because if there was probable cause in either event, there would have been a valid search of the sedan. If the search came after the arrest, the search was valid as incidental to a lawful arrest. Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. If, however, the search occurred before the arrest, it was supported by probable cause and because it was a search of a vehicle engaged in an illegal transportation of contraband, i. e., non-taxpaid distilled spirits, in violation of 26 U.S.C.A. § 5205(a) (2), it was not prohibited by the Fourth Amendment. Very much in point is United States v. Haley, 6 Cir. 1963, 321 F.2d 956. See also, United States v. Boston, 2 Cir. 1964, 330 F.2d 937, cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053.

### Probable Cause

 The most important issue in this case remains to be discussed. The arrest and seizure were made under 26 U.S.C.A. § 7608, which authorizes such an arrest if an agent "has reasonable grounds to believe that the person to be arrested has committed, or is committing, any such felony". This has been equated to the probable cause requirement for arrest under the Fourth Amendment. United States v. Elgisser, 2 Cir. 1964, 334 F.2d 103, cert. denied, 379 U.S. 881, 85 S.Ct. 151, 13 L.Ed.2d 87. Here the agents acted upon information received from a confidential informer. As stated in United States v. Robinson, 2 Cir. 1963, 325 F.2d 391, 393, decisions as to the reliability of informers "should not be left in the hands of law enforcement officers who may later be called upon to justify their action * * *". For that reason the defendant demands the iden-

1. Obviously there was no opportunity for the agents to obtain such a warrant, because at the time they observed the defendant place the suspicious looking carton in the trunk it was too late. United States v. Parrott, 6 Cir. 1962, 304 F.2d 619.

2. The agents had a right without making a formal arrest, to temporarily halt the defendant's moving sedan and question him, if they had reasonable grounds to believe, as they did in this case, that a felony was being committed in their presence. Rios v. United States, 1960, 364 U.S. 253, 80 S.Ct. 1431, 1453, 4 L.Ed.2d 1688; Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; United States v. Bonanno, S.D.N.Y.1960, 180 F.Supp. 71. See also definition of "arrest", ALI Code of Crim.Proc. § 18. After the defendant made his answer and opened the trunk, the agents had additional grounds to believe that a felony was being committed.

tity of the informer in order to test his reliability as to the existence of probable cause. But such demand need not be complied with if the Government can establish that the informer has been reliable in the past and his present information is to some extent confirmed by sufficient evidence apart from the confidential information. United States v. Elgisser, supra. Probable cause which deals with the practicalities of everyday life must be decided upon the particular facts of each case. Brinegar v. United States, supra. The inquiry is whether the facts and circumstances within the agents' knowledge would lead a man of reasonable caution to believe that an offense was being committed.

Zimmerman received information from an informer whose reliability in the past had been thoroughly tested and who a year previously had connected the defendant with the illicit liquor traffic. This informer accurately described the defendant, his white Ford sedan, its license plate number, and also identified the defendant's place of residence as 387 Williams Avenue. With this information the agents were able to independently verify the description of the defendant, the white Ford sedan, its license plate number, and the ownership of the sedan and the residence of the defendant. To this must also be added the independent information obtained by the agents from their observation of the size, weight and description of the carton carried by the defendant to his sedan. See, United States v. Broadnax, 6 Cir. 1965, 346 F.2d 119, cert. denied, 1966, 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466. Based upon all of the circumstances, it is the conclusion of the Court that the agents had probable cause to make the seizure and arrest without a warrant, both at the time the sedan was ordered to the curb and thereafter when the trunk was opened.

 Defendant claims that his answer to Zimmerman's question that he had "a case of whisky" in the trunk of his sedan is inadmissible because he had not been advised of his constitutional rights under Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The Court does not agree. Only if the arrest could be pinpointed at the time the sedan was stopped could there be any color to this claim. Even then the claim would be without merit because the defendant was not at that time formally placed under arrest and could not have believed that he was in custody. Consequently, "the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present" (Miranda v. State of Arizona, supra, p. 478, 86 S.Ct. p. 1630). At that time the investigation was more in the nature of "on the scene" questioning in the fact finding process. Moreover, it is very doubtful whether there was anything incriminating in the defendant's statement. However, if the time of arrest is fixed at the moment when the agents actually placed the defendant in custody, it becomes clear that the statements made by the defendant before that time were not foreclosed by any constitutional prohibition. Miranda v. State of Arizona, supra.

Therefore, the motion to suppress will be denied and the trial will proceed accordingly.