STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ASBURY JASPER RUDD, DEFENDANT-APPELLANT.

Argued April 11, 1967—Decided May 9, 1967.

*Mr. Hymen B. Mintz* argued the cause for appellant.

*Mr. James R. Zazzali,* Assistant County Prosecutor, argued the cause for respondent (*Mr. Brendan T. Byrne,* County Prosecutor of Essex County, attorney).

PER CURIAM. The defendant was convicted of murder in the second degree and appealed to this Court as of right under *R. R.* 1:2–1(c). The evidence supporting the conviction was compelling and his brief contains no challenge addressed to its weight. It does however advance several points of alleged legal error which will be dealt with here.

On September 13, 1965 at about 11 P. M. the decedent George Richardson's body was found in a pool of blood just outside his room at 16 East Kinney Street. He had been stabbed to death, the lethal blow having been a five-inch stab wound which entered the left chest cavity and severed the pulmonary artery. Earlier in the evening, the defendant had been drinking in the decedent's room and there had been an argument. The defendant was understood to be a cousin of the decedent and, after the police had been to the scene they went to the defendant's apartment which was nearby at 20½ East Kinney Street. Detective Carofolo testified that when he first entered the defendant's apartment he did not suspect him as the culprit and simply said, "Mr. Richardson is lying on the floor at No. 16 and he is dead. We understand you are a relative." The defendant immediately responded, "Yeah, I know. I was over there. We had an argument. He hit me on the head." Looking about the room, Detective Carofolo

and his associates saw pants and shoes which were spotted with blood and a knife which had been placed in the trash basket. They then took the defendant into custody, while seizing the pants and shoes along with the knife which was later determined to have fibers under its hilt matching those used in the shirt worn by the decedent when he was killed.

At police headquarters the defendant was told that he did not have to make a statement and that any statement he did make could be used against him in a court of law. He was also told that he had the right to talk with a lawyer of his own choice or anyone else and that if he could not pay for a lawyer the court would get one for him. The defendant signed a so-called preamble, bearing the date September 14, 1965 1:25 A. M., which acknowledged all of the foregoing. He then made a statement which was in question and answer form and was interrupted during its course by the entry into the room of an assistant prosecutor who received an affirmative answer when he inquired as to whether the defendant was making his statement voluntarily and whether he understood what he was doing. At that point the assistant prosecutor advised the defendant that he did not have to make a statement, that anything he said could be used against him, that he had a right to a lawyer, and that if he could not afford a lawyer the State would provide one free of charge. The assistant prosecutor testified that the defendant said he did not want a lawyer or anyone else and the taking of the statement then proceeded to its conclusion.

In his statement, the defendant asserted that he had been arguing with George, that he fell asleep and awakened when he felt a knot on his head, that he struck George with the knife which was later found in the defendant's room, and that as far as he knew George had been trying to strike him with a knife. In his testimony during the trial, the defendant said that when he awakened in George's room he discovered he had been hit on the forehead and saw a tall man holding a knife. A that point, according to his testimony, the defendant picked up a knife from the kitchen table, motioned

it toward the man and then ran out the door, going directly to his own room. The record establishes that George had been blind or substantially so for many years.

In his first point of alleged error the defendant complains about the trial court's action in admitting photographs of the decedent's body into evidence and in placing them on a bulletin board in the constant view of the jury throughout the trial. The photographs, which were in black and white, were probative and were not unduly inflammatory. They were properly admitted into evidence. See *State v. O'Connor*, 42 *N. J.* 502, 511, *certiorari* denied 379 *U. S.* 916, 85 *S. Ct.* 268, 13 *L. Ed. 2d* 187 (1964). We find no prejudicial error in the display of the photographs on the bulletin board although it appears to us that the trial court might better have honored the defendant's request that they be removed and redisplayed as needed from time to time to help clarify testimony. Although we are entirely satisfied that here the constant display could not have had any effect on the ultimate verdict, the issue should be wholly avoided in future criminal trials.

The defendant's second point attacks the trial judge's references to the evidence during his charge, as having improperly conveyed to the jury the impression that he felt there should be a verdict of guilty. We find the attack to be without substance. The trial judge had the right to comment on the evidence so long as he clearly and fairly left to the jury's determination all of the factual issues and the ultimate question of guilt or innocence. See *State v. Begyn*, 34 *N. J.* 35, 53 (1961). Throughout the charge he took pains to tell the jury that it was the sole and exclusive judge of the facts, that its own recollection of the facts was controlling, and that although he had the right to comment on the evidence and to point to such inferences as he considered persuasive, the jury was not bound by his comment and could properly disregard it if it saw fit. At the conclusion of his charge, the trial judge cautioned the jury that the ascertainment of the truth rested entirely with it and it was to analyze all of the evidence in the case and determine whether it was

satisfied beyond reasonable doubt that the defendant was guilty of the offense charged.

 The defendant in his third point cites *Miranda v. State of Arizona,* 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed. 2d* 694 (1966), in support of the contention that the oral statement by the defendant in his own apartment and the pants, shoes and knife seized there, should have been excluded because he was not then advised of his constitutional rights. The statement and the seizure were made and the defendant's trial was held before the decision in *Miranda.* We are neither obliged nor disposed to apply *Miranda* retrospectively to trials completed or under way before the Supreme Court's opinion was handed down. *Johnson v. State of New Jersey,* 384 *U. S.* 436, 86 *S. Ct.* 1772, 16 *L. Ed. 2d* 882 (1966) ; *State v. Zucconi,* 93 *N. J. Super.* 380, 383 (*App. Div.* 1967) ; the state decisions elsewhere have declined with substantial unanimity to apply *Miranda* retroactively; see, *e. g., People of State of New York v. McQueen,* 18 *N. Y. 2d* 337, 274 *N. Y. S. 2d* 886, 221 *N. E. 2d* 550, 551–554 (*Ct. App.* 1966) ; *State v. Gannites,* 221 *A. 2d* 620, 623 (*R. I. Sup. Ct.* 1966) ; *Commonwealth v. Morrissey,* 67 *Mass.* 11, 222 *N. E. 2d* 755, 758 (*Sup. Jud. Ct.* 1967) ; see also *People v. Myers,* 35 *Ill. 2d* 311, 220 *N. E. 2d* 297, 303 (*Sup. Ct.* 1966) ; *State v. Millo,* 4 *Conn. Cir.* 164, 227 *A. 2d* 567, 570 (*App. Div.* 1966) ; *People v. Fordyce,* 378 *Mich.* 208, 144 *N. W. 2d* 340, 341–342 (*Sup. Ct.* 1966) ; *State v. Carden,* 9 *Ohio St. 2d* 1, 222 *N. E. 2d* 620, 628 (*Sup. Ct.* 1966) ; *Reimers v. State,* 31 *Wis. 2d* 457, 143 *N. W. 2d* 525, 530 (*Sup. Ct.* 1966) ; *State v. Noyes,* 69 *Wash.* Dec. 2d 444, 418 *P. 2d* 471, 474 (*Sup. Ct.* 1966).

 In any event, we do not consider that *Miranda,* even if applicable, would bar the statement or seizure made at the defendant's apartment. When Detective Carofolo first went to the apartment, according to his testimony which the trial court fully credited in its preliminary finding of voluntariness and admissibility, he went not to interrogate a suspect but to notify a relative. When he told the defendant about George's death the defendant blurted out that he knew about

it, that they had an argument, and that George had hit him on the head. Surely there was no occasion for giving the defendant any warnings before he volunteered this information. His statement, having been made freely before he was taken into custody, was clearly admissible in evidence. Indeed the opinion itself in *Miranda* gives fair recognition to the evident distinction between custodial interrogations where constitutional warnings are required and on-the-scene or non-custodial statements as here. See 86 *S. Ct.* 1602, 16 *L. Ed. 2d,* at *pp.* 725–726; see also *Commonwealth v. O'Toole,* 67 *Mass.* 149, 223 *N. E.* 2d 87, 90 (*Sup. Jud. Ct.* 1967); *United States v. Littlejohn,* 260 *F. Supp.* 278, 282 (*E. D. N. Y.* 1966); cf. *United States v. Davis,* 259 *F. Supp.* 496 (*D. Mass.* 1966); 80 *Harv. L. Rev.* 91, 206 (1966).

 The pants, shoes and knife were seized after the defendant had told Detective Carofolo about his argument with the decedent. They were all in open view and in the light of the circumstances their seizure was entirely proper. See *State v. Mark,* 46 *N. J.* 262, 270–273 (1966). Furthermore, no motion attacking the seizure was made under *R. R.* 3 :2A–6 either before trial or during the trial. See *State v. Campisi,* 49 *N. J.* 238 (1967). Although the defendant cites *Escobedo v. State of Illinois,* 378 *U. S.* 478, 84 *S. Ct.* 1758, 12 *L. Ed.* 2d 977 (1964), we fail to see how it has any bearing on the admissibility of either the statement by the defendant at his apartment or the items seized there. *Cf. State v. Coleman,* 46 *N. J.* 16, 32–34 (1965), *certiorari* denied 383 *U. S.* 950, 86 *S. Ct.* 1210, 16 *L. Ed.* 2d 212 (1966); *State v. Ordog,* 45 *N. J.* 347, 361–362 (1965), *certiorari* denied 384 *U. S.* 1022, 86 *S. Ct.* 1942, 16 *L. Ed.* 2d 1025 (1966); *State v. Lanzo,* 44 *N. J.* 560, 566–567 (1965).

 In his fourth point the defendant complains about the admission of his written statement which he says was taken without adequate protection of his constitutional rights. The trial judge conducted a hearing out of the presence of the jury and determined that the statement was voluntary and admissible. He therefore allowed it to be received in evidence, leav-

ing questions of voluntariness and credibility to the jury in accordance with the practice outlined in *State v. Smith,* 32 *N. J.* 501, 557–560 (1960), *certiorari* denied 364 *U. S.* 936, 81 *S. Ct.* 383, 5 *L. Ed. 2d* 367 (1961), and in the many succeeding cases. See *State v. Hodgson,* 44 *N. J.* 151, 161–162 (1965), *certiorari* denied 384 *U. S.* 1021, 16 *L. Ed. 2d* 1022 (1966); *State v. Smith,* 43 *N. J.* 67, 75–76 (1964), *certiorari* denied 379 *U. S.* 1005, 85 *S. Ct.* 731, 13 *L. Ed. 2d* 706, rehearing denied 380 *U. S.* 938, 85 *S. Ct.* 945, 13 *L. Ed. 2d* 826 (1965); *State v. Tassiello,* 39 *N. J.* 282, 292 (1963). He expressly credited the State's evidence establishing the warnings given and discredited the denials by the defendant. Those warnings were sufficient even under the requirements later set forth in *Miranda.* See *Narro v. United States,* 370 *F. 2d* 329 (5 *Cir.* 1966). We find no error in the admission of the written statement.

█ █ The fifth and final point advanced by the defendant is that the trial court erred in charging the jury that all of its members must "agree as to the result." There was no pertinent objection to the charge and the defendant must therefore rely on plain error. *R. R.* 1:5–1(a). The trial court first told the members of the jury that they should deliberate with a view towards reaching an agreement without any violence to their individual judgments, that in the course of their deliberations they should not hesitate to re-examine their views and change them if convinced they are erroneous, but that they should not surrender their honest convictions solely because of the opinions of fellow jurors or for the mere purpose of returning a verdict. He then told them that here, as in every criminal case, "the law requires that you all agree as to the result. In other words, your verdict must be unanimous. Therefore, you cannot return a verdict until all twelve of you are in full accord and have reached a determination under the rules of law which I have laid down for you." In the light of the entire charge, the jury could not have been misled and could not have believed that the law compelled them to agree

notwithstanding individual convictions to the contrary. We find no error in the charge let alone plain error.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For reversal* — None.