Michael Francis **AGIUS**, a/k/a Michael Rockford Ages, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 25228.

United States Court of Appeals
Fifth Circuit.

June 30, 1969.

Rehearing and Rehearing En Banc Denied Oct. 22, 1969.

Neal J. Dunn, Miami, Fla., for appellants.

Theodore Klein, Asst. U. S. Atty., Miami, Fla., for appellee.

Before THORNBERRY and SIMPSON, Circuit Judges, and SUTTLE, District Judge.

SUTTLE, District Judge:

Appellant was found guilty by a jury of robbing a federally insured savings and loan association in violation of 18 U.S.C. § 2113(a).

At 2:56 p. m. on May 17, 1967, the Washington Federal Savings and Loan Association in North Miami Beach, Florida, was robbed by one man. The robbery was accomplished at gunpoint, and the robber was seen by five employees. The association was protected by a hidden camera, which took pictures at the rate of one frame every 15 seconds. The culprit was shown in two of these pictures, which the F.B.I. had developed that evening.

The next day one of the pictures appeared in the local newspaper, and led the F.B.I. to seek out appellant. Two agents arrived at his home at approximately 2:00 p.m. on May 18, found no one home, and waited. Appellant arrived in his car at approximately 2:30 p.m. As he approached his home the agents met him, identified themselves, and explained the nature of their call. They gave appellant a partial *Miranda* warning [1] and asked him if he could account for his time on the previous afternoon. Appellant said he had been kidded by his friends about the resemblance between himself and the robber pictured in the paper, and was expecting their visit. He stated that he could account for his time and would like to have the agents help him get the thing "cleared up." The agents suggested that they allow the association employees to resolve what appellant insisted was a "case of mistaken identity." Appellant agreed, but insisted that they all go first to talk to people appellant claimed could vouch for his whereabouts the afternoon of the robbery. The agents agreed. Before leaving, appellant went to look in his car

1. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). While the trial court found, as an alternative ground for denying the appellant's motion to suppress, that the warning was given and the rights enumerated therein waived, the government here concedes that no full *Miranda* warning was given appellant at his home. See Fendley v. United States, 384 F.2d 923 (5th Cir. 1967). Of course, appellant could not waive rights he knew nothing about. Miranda v. Arizona, *supra* at 471–472, 476, 477, 479, 86 S.Ct. 1602.

for a receipt of one of his customers which gave that customer's address. While he was rummaging through his car looking for this receipt, the agents noticed a toy gun in the glove compartment. Upon inquiry by one of the agents, appellant first explained that the gun must have been left there by the agency from which he bought the car. When the agent pointed out that car agencies usually clean out a car before they sell it, appellant then explained that he had put the gun there for his own protection. The receipt was eventually found.

The agents, accompanied by appellant, then went to a service station where appellant had been shortly before the robbery. One of the agents questioned the attendant, who remembered appellant being there the previous afternoon. He said appellant was wearing a dark suit, white shirt, and dark tie, the same attire as the robber. Confronting appellant with that description, appellant said he wore a sport shirt on the afternoon of the robbery, and denied having worn a suit.[2] Failing to find the customer, whose address was shown on the receipt, at home, the trio proceeded to the parking lot of the savings and loan association. There, as arranged by radio, were two other agents who were similar in general appearance to appellant. At appellant's suggestion, the agents rearranged their dress to conform to his and put on sun glasses. They then all entered the parked car, sitting where appellant directed. The employees involved came out of the building and each identified appellant as the robber.

Appellant was then formally arrested and was given the full *Miranda* warning. Appellant asked to call his lawyer and was taken to the station and allowed to do so. This was at approximately 4:30 p.

m., or about two hours after appellant was first approached by the agents.

Before trial, appellant moved to suppress the toy gun, all statements made before being given the full warnings, and the out-of-court identification of the association employees. After a hearing, the Trial Court found that there was no "lineup" as that term is used in the cases, and that the confrontation was held at the instance and with the permission and consent of appellant. The Court further found that the evidence complained of was obtained during the investigatory stage of the proceedings, and that appellant was at no time subjected to "custodial interrogation" as would require the full warning. Appellant here attacks these findings, and seeks a reversal of his conviction because of the introduction into evidence of the items sought to be suppressed.[3]

The crime here involved was solved, so far as the F.B.I. were concerned, within 28 hours after it occurred. The investigation began with two indeterminative photographs of the robber, with corroborating descriptions of eyewitnesses. From this, the agents were led to suspect appellant, and went to interview him at his home. He was not suspected to be a witness to the crime, who could give general investigative information, but was viewed as the possible offender. While this fact alone does not make the confrontation between appellant and the agents "custodial interrogation," requiring that appellant be warned of his rights, it demands that the situation be given the closest scrutiny.

In Miranda v. Arizona, the Supreme Court set out the following concise definition of what it meant by "custodial interrogation":

"By custodial interrogation, we mean questioning initiated by law enforce-

---

2. This account of the conversation is that of the agent as he testified on rebuttal, after appellant had taken the stand and testified that he wore a suit in the early part of the afternoon of May 17, and a sport shirt the latter part. On cross he could not recall ever categorically denying wearing a suit.

3. The toy gun and appellant's explanation of its presence in his car were admitted during the government's case in chief. The conversation as to appellant's dress the afternoon of the robbery was offered on rebuttal. See note 2, *supra*.

ment officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." [4]

Since then, the Court has made clear that it makes no difference why or of whom such person is "in custody," [5] nor where such person is "in custody * * * or otherwise deprived of his freedom of action in any way." [6]

This Court has also dealt with the problem. In Windsor v. United States,[7] a confession of one defendant led the F.B.I. to a motel and Windsor. We held that the questioning of Windsor in his motel room was custodial interrogation, despite the agents' contemporaneous statements that he was not under arrest or being detained in any way. We emphasized that the agents knew of Windsor's involvement and had probable cause to arrest him when they arrived at the motel, and held that this defendant was "in custody" within the meaning of Miranda regardless of what he was told his status was.[8] Since then, we have failed to find custodial interrogation in police questioning of the driver of a suspected stolen car,[9] of a Dyer Act suspect

in her own place of business,[10] and moonshiners within a few feet of their front porch.[11]

■ In light of the "fluid and fast-developing" nature of the law in this area we attempt no synthesis, but continue with "a cautious case-by-case approach * * * necessary to proper development of controlling precedent." [12] In the case sub judice, regardless of whether we concentrate on the subjective intent of the agents or that of appellant, and whether we look at probable cause or the focus of the investigation, it is clear that appellant was deprived of his freedom of action in a significant way at least immediately after the agents saw the toy gun in his car. Assuming that prior to that time the questioning was non-custodial and investigatory, it is beyond the capacity of a reasonable mind to suppose appellant was "free to go" after the discovery of the gun, viewed from whatever standpoint. The discovery of the gun, along with the resemblance between appellant and the robber, established probable cause and focused the identification. It must have made clear to both agents and appellant that the latter was going to be detained unless and until the

4.  384 U.S. at 444, 86 S.Ct. at 1612. In a note to this sentence, the Court stated: "This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused."

5.  Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), reversing 376 F.2d 595 (5th Cir. 1967).

6.  Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).

7.  389 F.2d 530 (5th Cir. 1968).

8.  We distinguished the earlier case of Evans v. United States, 377 F.2d 535 (5th Cir. 1967), on the grounds that there the defendant was given a full warning and the agents had not proceeded beyond the investigatory stage.
    We also quoted as pertinent the following language of Justice Sobol:
    "The prime inquiry is into the existence of probable cause. If indeed the police officer had probable cause to arrest, his protestations that the person detained was 'free to go' must be ignored. It must be presumed that a police officer will do his duty; if he has

probable cause to arrest, he will arrest. The existence of probable cause established 'custody.' Any other rule would permit the frustration of Miranda's commands."
    Sobol, The New Confession Standards "Miranda v. Arizona" (1966, Gould Publications), p. 61.

9.  Jennings v. United States, 391 F.2d 512 (5th Cir.) (Citing Evans v. United States, *supra* note 8, and Keegan v. United States, 385 F.2d 260 (9th Cir. 1967), cert. denied, 391 U.S. 967, 88 S.Ct. 2038, 20 L.Ed.2d 880 (1968)), cert. denied, 393 U.S. 868, 89 S.Ct. 154, 21 L.Ed.2d 136 (1968).

10. Archer v. United States, 393 F.2d 124 (5th Cir. 1968).

11. McMillian v. United States, 399 F.2d 478 (5th Cir. 1968).

12. Jennings v. United States, *supra* note 9, 391 F.2d at 516 (Simpson, J., concurring specially.). See 3 Cr.L.Rept. 2326 (July 24, 1968); Windsor v. United States, *supra*, note 7, 389 F.2d at 534 n. 3.

investigation was clearly to take a different direction. The adversary process had, at least at that point, begun. Thus, the trial court's findings regarding the admissibility of the statements made by appellant as a result of questioning initiated by the agents in an attempt to explain the presence of the gun are clearly erroneous. The admission of the statements, based upon these erroneous findings, was prejudicial error requiring reversal.[13]

■■ This does not mean that the toy gun itself is to be excluded on retrial. Appellant's argument against its admission appears two-pronged. He contends that (1) the gun was obtained as a result of custodial interrogation preceding its discovery, and hence tainted by the failure of the agents to give the *Miranda* warnings prior to that time, and (2) the gun was obtained by an illegal search, in that he was not warned that anything found in his car could be used against him. There is no merit to the second ground. Even if the agents should have warned appellant as alleged,[14] the trial court found, on the basis of conflicting testimony, that there was no search. The finding below, that appellant voluntarily went to the car and exposed its contents, and that the agents observed the gun, is adequately supported by the testimony. It is clear that items in plain view of law enforcement officers are not discovered as a result of a search.[15]

■■ As to the other ground, it may be that the responses of appellant at his home, before the discovery of the gun, both oral and physical, were not constitutionally tainted by the failure of the agents to give the complete *Miranda* warnings, as the result of investigative, non-custodial questioning [16] or as volunteered.[17] We need not decide these questions. Assuming *arguendo* that the earlier questioning was improper, we find that the voluntary act of appellant's going to the car and exposing its contents, followed by the accidental discovery of the gun, dissipated any taint from improper questioning, and made the gun admissible into evidence. It is clear that not every piece of evidence

---

13. This case is a clear example of an "exculpatory" statement "used to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication," which prompted the Supreme Court to repudiate the distinction between "inculpatory" and "exculpatory." Miranda v. Arizona, *supra* note 1, 384 U.S. at 476–477, 86 S.Ct. 1602.

14. Cf., United States v. Nikrasch, 367 F. 2d 740 (7th Cir. 1966). But see Byrd v. Lane, 398 F.2d 750 (7th Cir. 1968), cert. pending; Gorman v. United States, 380 F.2d 158 (1st Cir. 1967).

15. Ker v. State of Calif., 374 U.S. 23, 43, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); see Shorey v. Warden, 401 F.2d 474, 478 (4th Cir. 1968); United States v. Barone, 330 F.2d 543, 544 (2d Cir.), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964); Petteway v. United States, 261 F.2d 53, 54 (4th Cir. 1958).

16. See, e. g., Government of Virgin Islands v. Berne, 412 F.2d 1055 (3d Cir. 1969) [May 12, 1969]; Clark v. United States, 400 F.2d 83 (9th Cir. 1968); United States v. Bagdasian, 398 F.2d 971

(4th Cir. 1968); United States v. Squeri, 398 F.2d 785 (2nd Cir. 1968); United States v. Webb, 398 F.2d 553 (4th Cir. 1968); United States v. Thomas, 396 F.2d 310 (2d Cir. 1968); United States v. Knight, 395 F.2d 971 (2d Cir. 1968); Boyle v. United States, 395 F. 2d 413 (9th Cir. 1968), cert. pending; White v. United States, 395 F.2d 170 (8th Cir.), cert. denied sub nom. Kubik v. United States, 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed.2d 115 (1968); Menendez v. United States, 393 F.2d 312 (5th Cir. 1968); United States v. Gibson, 392 F. 2d 373 (4th Cir. 1968); Nobles v. United States, 391 F.2d 602 (5th Cir. 1968); Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476, supplemented in 404 F. 2d 1335 (1968); and cases cited *supra* notes 9–11.

17. See, e. g., Anderson v. United States, 399 F.2d 753 (10th Cir. 1968); United States v. Chow, 398 F.2d 596 (2d Cir. 1968); Parson v. United States, 387 F. 2d 944 (10th Cir. 1967); Stone v. United States, 385 F.2d 713 (10th Cir. 1967), cert. denied, 391 U.S. 966, 88 S.Ct. 2038, 20 L.Ed.2d 880 (1968); Cotton v. United States, 371 F.2d 385 (9th Cir. 1967).

uncovered in connection with improper custodial interrogation is automatically excluded.[18] As we have pointed out in another context, "the question to be asked each time is: ' "[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).' " [19] Here, the discovery of the gun was not the result of the agents' exploiting the illegal questioning, if any. There was no intimidation, trickery, or cajolery, and the agents in no way induced or caused appellant to expose the contents of his car. We have already approved of the finding below that appellant's going to the car and exposing its contents was an act of free will, and have found that the government has shown that this act was uncoerced in any way. His action, along with the accidental "plain sight" discovery of the gun, was sufficient to purge whatever taint there was in the prior interview of appellant at his home. There was no error in the admission of the toy gun into evidence.

■ With a view toward retrial of this case, we hold that the trial court's refusal to suppress the out-of-court identification of appellant was correct. The confrontation here complained of took place on May 18, 1967, and hence the requirements of United States v. Wade do not apply.[20] Nor was the identification procedure, judged by the totality of the circumstances, "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process of law.[21]

Finally, we point out that the testimony of the agent as to appellant's statement concerning his apparel on the afternoon of the robbery is suspect for the same reasons as his prior explanation regarding the presence of the toy gun in his car. In determining their admissibility in the retrial the judge should consider the continued validity of Walder v. United States,[22] in light of language in Miranda,[23] as extremely questionable.[24]

The case is reversed and remanded.

18. See Wong Sun v. United States, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Mapys v. United States, 409 F.2d 964 (10th Cir. 1969); Durham v. United States, 403 F.2d 190 (9th Cir. 1968); United States v. Knight, *supra* note 16; *cf.*, Phelper v. Decker, 401 F.2d 232 (5th Cir. 1968), and cases cited therein.

19. Phelper v. Decker, *supra* note 18, at 237, quoting from, Wong Sun v. United States, *supra* note 18, 371 U.S. at 488, 83 S.Ct. 407.

20. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967). Wade was held prospective in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1968). See Rivers v. United States, 400 F.2d 935 (5th Cir. 1968).

21. Stoval v. Denno, *supra* note 20, 388 U. S. at 302, 87 S.Ct. at 1972; see Marden v. Purdy, 409 F.2d 784 (5th Cir. 1969); *cf.*, Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Compare Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

22. 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

23. 384 U.S. at 476–477, 86 S.Ct. 1602.

24. See Proctor v. United States, 404 F.2d 819 (D.C.Cir. 1968); United States v. Fox, 403 F.2d 97 (2d Cir. 1968); Blair v. United States, 401 F.2d 387 (D.C.Cir. 1968); Groshart v. United States, 392 F.2d 172 (9th Cir. 1968); Wheeler v. United States, 382 F.2d 998 (10th Cir. 1967); *cf.*, United States ex rel. Hill v. Pinto, 394 F.2d 470 (3d Cir. 1968).