**UNITED STATES of America, Appellee,**

v.

**Thomas Michael PIERCE, Appellant.**

**No. 11706.**

United States Court of Appeals Fourth Circuit.

Argued Feb. 6, 1968.

Decided June 10, 1968.

Albert V. Bryan, Circuit Judge, dissented.

Robert O. Ellis, Huntington, W. Va., (Court-appointed counsel) for appellant.

George D. Beter, Asst. U. S. Atty., (Milton J. Ferguson, U. S. Atty., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

HAYNSWORTH, Chief Judge:

Defendant Thomas Michael Pierce asks this Court to reverse his conviction under the Dyer Act, 18 U.S.C. § 2312 and to grant him a new trial. He contends that the testimony at his trial of law enforcement officers as to statements made by him after his being taken into custody should have been excluded because the interrogating officers failed to comply with the dictates of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. We agree.

Defendant Pierce, on April 29, 1966, rented a 1966 Plymouth from Avis in Chicago under the assumed name of Robert Dean. The car was to be returned in Chicago on May 2, 1966. On May 2nd defendant wrecked the Plymouth in Wayne County, West Virginia and had it towed to Williamson, West Virginia and placed on a storage lot. When defendant returned to Chicago, he failed to notify Avis of the car's condition or whereabouts.

On June 20, 1966, defendant rented another car from Avis in Chicago, this time identifying himself as Philip Carlson. Though the rental slip called for a 1966 Plymouth, Avis erroneously provided defendant with a 1966 Chrysler. The car was to be returned in Chicago on June 27, 1966.

Alerted in the early morning hours of June 22 to the fact that three young boys driving in a particular direction were carrying a large sum of money in a paper bag and aware of the fact that a savings and loan company in the Huntington area recently had been held up, two Williamson City policemen pursued defendant and two companions and overtook them just as they were parking in front of a hotel in Williamson. One of the officers asked the defendant, the driver of the car, for some identification and when he produced a suspicious looking draft card in the name of Philip Carlson, he was asked to produce a driver's license and evidence of ownership of the 1966 Chrysler he was driving. Defendant could not produce a driver's license but did offer a rent-a-car slip showing a rental of a 1966 Plymouth. The boys were then informed that they would have to go to the police station until "we could get some verification on it." Defendant agreed to a search of his car, and one of the officers discovered a paper bag containing approximately $2100 in money and checks beneath the driver's seat. Defendant denied ownership of the money and the boys were taken to police headquarters.

At the station they were placed in the office of the Chief of Police to await his arrival. Defendant continued to conceal his true identity until Chief of Police Bucci arrived at 9:00 a. m. After thirty minutes of questioning by Bucci, defendant admitted his true identity and explained that the money and checks belonged to his father, who owned a chain of restaurants in Chicago. This explanation was verified by calls made to Chicago. A check with Avis then provided the explanation for defendant's possession of a rental slip for a Plymouth rather than a Chrysler. Having evidently grown suspicious because of defendant's use of an assumed name, however, Chief Bucci continued to probe. He inquired as to the reason for Pierce's presence in Williamson, and Pierce replied that while in Williamson two or three weeks earlier, he had met a girl and had returned to see her. Chief Bucci then asked defendant how he had made the trip the first time, and Pierce stated that he had come in a rented Plymouth. Finally, the Chief of Police inquired as to the present whereabouts of the Plymouth, and Pierce responded that he had wrecked it in Wayne County and had never reported its condition or whereabouts to Avis. At the trial, Chief Bucci testified to this admission by defendant though prior to the interrogation defendant had been warned only of his right to remain silent.

Sometime during the morning of Pierce's admission to Chief Bucci, the Chief summoned an FBI agent and related to him what Pierce had said about the wrecked Plymouth. The agent then proceeded to interrogate Pierce at the police station. He first identified himself as an FBI agent and then administered the four-fold warning prescribed by Miranda v. State of Arizona, supra. Defendant acknowledged his understanding of the warnings and responded to the agent's questions by relating the story of the wrecked car. He told the agent that he had not notified Avis as to the whereabouts of the car and that he did not intend to return the car to Avis. The agent testified to these admissions at the trial.

Count one of the indictment charged defendant with transporting the 1966 Plymouth across a state line knowing it to have been stolen. Count two charged him with the same offense with regard to the Chrysler, but that count was dismissed at the conclusion of the Government's case in chief.

Chief of Police Bucci's testimony as to defendant's admission that he had failed to notify Avis of the condition and whereabouts of the wrecked Plym-

outh and the apprehending officers' testimony as to statements made by defendant after they first informed him that he would have to go to the station house should have been excluded, for the statements were elicited in violation of defendant's Fifth Amendment privilege against self-incrimination as that privilege is defined in *Miranda:*

> \* \* \* the prosecution may not use statements whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As to the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following means are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.[1]

Concededly, the procedural safeguards required by *Miranda* for custodial interrogation were not employed prior to defendant's questioning by the Williamson City police. But the Government contends that this fact is not conclusive on the ground that defendant's statements were not incriminating. If these statements had not been to some extent incriminating, however, it is difficult to see why the prosecution would have offered them. The statements had some bearing on the question of criminal intent, and this, of course, is why they were offered.

It is difficult to determine from the Government's argument whether or not it challenges the proposition that the interrogation in question was "custodial" within the meaning of *Miranda.* At various points Government counsel has stressed that defendant was never told that he was being placed under arrest; however, we find this fact to be insignificant. Defendant was told by the officers who stopped him in front of the hotel that he would have to come down to the station until his story could be verified, and one of these officers candidly acknowledged that if defendant had attempted to walk away at that moment, he would have stopped him. Thus, it seems clear that defendant's sojourn at the police station was anything but voluntary. The questioning was custodial in nature. If the arresting officer's failure to make a formal declaration of arrest were held conclusive to the contrary, the rights afforded by *Miranda* would be fragile things indeed.

■ Because the statements elicited from the defendant by the Williamson City police after his being told that he would have to come down to the station were incriminating in nature and were obtained during custodial interrogation without defendant's being accorded the procedural safeguards required by *Miranda*, their admission in evidence was erroneous. We need not determine whether or not this error was harmless in view of the FBI agent's testifying, among other things, to the same statements, for his testimony as to defendant's admissions should also have been excluded.

■ It is true that prior to questioning defendant, the agent administered the four-fold warning prescribed by *Miranda* and defendant acknowledged that he understood the warning. The Government contends that these circumstances show an effective waiver by defendant of the rights conferred by *Miranda*, but we disagree. At page 444 of that opinion, 86 S.Ct. at page 1612, the Court

---

1. Miranda v. State of Arizona, supra, p. 444, 86 S.Ct. p. 1612.

states: "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently." Thus, it is made clear that a waiver to be effective must be voluntary, and we find that the waiver in the instant case does not pass this test of voluntariness. The FBI agent entered the fray armed with defendant's earlier admissions to the Williamson police, and it is most probable that defendant was aware of this fact. Defendant's knowledge of this fact coupled with the agent's warning conveyed the idea that though defendant could remain silent if he wished, he might as well answer the questions put to him, since the agent was already aware of the earlier answers. The decision to respond under such circumstances hardly can be termed voluntary. The situation is not substantially different from what it would have been if Chief Bucci had administered the belated warning and, thereafter, had obtained a repetition of the earlier admissions, for the FBI agent had the advantage of all that Chief Bucci knew. Warning after the admission is too late, and the bare fact of subsequent repetition to the same or a cooperating officer cannot make the admission admissible.

The agent's testimony as to any statements made to him by defendant should have been excluded.

Because all statements elicited from defendant after he was first apprised that he would have to come down to the station were inadmissible, this case is reversed and remanded to the District Court for a new trial.

Reversed and remanded.

ALBERT V. BRYAN, Circuit Judge (dissenting):

I think the court here reverses on an attenuated reading of *Miranda* and over-cautious application of it. This is indeed a blow to law enforcement. With-out the slightest doubt of the defendant's guilt, his conviction is now set at naught. Affirmance would not invade the accused's innocence, and is demanded by the public interest.