Thadious Edward HARNEY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 24916.

United States Court of Appeals
Fifth Circuit.

Feb. 21, 1969.

gave another written confession to the FBI. The trial court conducted full and appropriate hearings outside the presence of the jury to determine the admissibility of these confessions. The earlier statements, including the first written confession, were suppressed, but the trial judge declined to suppress the second written statement. It was admitted in evidence over objection. Appellant was convicted by the jury of interstate transportation of a stolen vehicle,[2] and he appeals. We reverse.

At 3:38 a. m. Officer Hill of the West Palm Beach, Florida police department stopped the Pontiac car driven by appellant after observing it crossing the double yellow center line of a street in that city. Hill asked appellant for his driver's license, which he produced, and for evidence of ownership, which appellant did not produce. Hill was given permission by appellant to search the trunk of the car for evidence of ownership and was shown the empty glove compartment, but appellant declined to allow Hill to search or to see the contents of the open floor console (in which Hill observed documents, some of which bore a Pontiac insignia, and a wallet). In response to questions from Hill, appellant told Hill that he purchased the car new in Detroit, and he stated the price paid for it. Before leaving the scene, on questioning by Hill, appellant admitted that he was a convicted felon and that he had not registered as such in Florida.[3]

Hill felt that the car was stolen, but he told appellant that he was arresting him for driving across the center line and for an unlighted tail light. Hill then took appellant to the West Palm Beach police station and jail. All the subsequent events occurred there. At the station, for the first time, Hill gave appellant a *Miranda*-type warning,

Phillip A. Hubbart, Miami, Fla., for appellant.

Morton Orbach, Asst. U. S. Atty., Miami, Fla., for appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant, in custody and as the result of interrogation, made oral statements and then a full written confession to the local police, all without sufficient *Miranda* warnings.[1] Subsequently, after a sufficient warning had been given, he

1. Appellant was tried May 23, 1967, thus making both *Miranda* and *Escobedo* applicable to the case. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

2. 18 U.S.C.A. § 2312 (1951).

3. Fla.Stat.Ann. § 775.13 (1965) makes the failure to register punishable by six months in county jail or fine of not more than $500, or both.

found to be insufficient by the trial court. He interrogated appellant no further, and appellant gave no statements to him. Hill then formally charged appellant with four offenses— crossing the center line, unlighted tail light, failure to register as a convicted felon, and auto theft.

At about 4:00 a. m. Officer Matthews of the same police department interrogated appellant concerning ownership of the car and where he had obtained it, without giving any warning. Appellant said that he had bought another car in Detroit, wrecked it, and that his insurance company had purchased as a replacement the one he presently was driving. He stated that he had no evidence of ownership but possibly it could be obtained from the insurance company in Nashville.

Appellant was placed in a one-man cell. Later he was given breakfast and went to sleep. About 9:00 or 10:00 a. m. he was awakened and taken from the jail portion of the building to the detective bureau where he was interrogated by Detective Slattery. This interrogation was pursuant to investigation of the auto theft charge. Slattery had been told by his superior that appellant had been arrested for a traffic offense and charged with auto theft, and he was instructed to follow up on the case. He had seen Hill's written report.

Slattery read appellant a prepared card, described by Slattery as an "idiot card," the text of which was a *Miranda*-type warning. The trial court found the contents of the card to be insufficient under *Miranda* standards.[4] During the interrogation by Slattery, appellant repeated the story he had told Matthews, except that he gave the name of the Pontiac dealer in Nashville from whom he stated the insurance company had purchased the car. This interrogation lasted approximately thirty minutes.

Slattery talked by telephone with the named Pontiac dealer (or its successor) in Nashville and found that the automobile had been found missing from its premises and reported as stolen a month before. Approximately an hour after Slattery's initial interrogation appellant was brought down again from jail. Slattery confronted him with what he had found out and read him the card again. Appellant then orally confessed that he had stolen the car from the Nashville dealer and transported it to Florida.

At some time between the oral confession to Slattery and early afternoon a detailed typewritten statement was prepared by the detective, and appellant signed it. At one point in his testimony Slattery referred to the statement as bearing a written time notation of 10:40 a. m. Elsewhere he described the time notation as "1:40," and stated this was when he began to type it, and that it was signed shortly thereafter.

Some time before noon appellant was returned to his cell, where he had lunch and stayed two or three hours. During this mid-part of the day, at a time not precisely fixed but after the oral confession to Slattery, appellant was told the FBI had been notified and would arrive later.

About 3:00 p. m. FBI Agent Barron came to police headquarters. He conferred with Slattery.[5] At the hearing on the motion to suppress Barron could not recall whether Slattery gave him a copy of appellant's written statement, but he did remember that Slattery told him "the facts of the case" and informed him that he already had obtained a statement from appellant admitting he had stolen the car in Nashville.

Barron began his conference with appellant at approximately 3:15 p. m. He gave appellant warnings which the district court held sufficient under *Miranda*. Appellant signed a waiver form,

4. Appellant denied that the card was read to him, but for purposes of this case we assume it was.

5. Slattery could recall no such conference, but Agent Barron's records contain a written report of it.

waiving the right to remain silent and the right to counsel. Actual interrogation began about 3:40 p. m. Barron told appellant to tell the truth, that any story he gave would be checked out and not to waste the time of both of them by telling any lies. Appellant made a full confession, written in longhand by Barron and signed by appellant about 5:15 p. m. Appellant testified that he confessed to Barron because "I figured I made one statement, I couldn't tell a lie about it now."

In denying suppression of the statement given to the FBI, the district judge found that while the first written statement given to Slattery was obtained in violation of appellant's constitutional rights, there was no evidence appellant had been put through any physical or psychological coercion, intimidation or fear by Slattery when obtaining it, and that in obtaining the second written statement the FBI agent had fully advised appellant of his rights, and that appellant made the second written confession voluntarily and intentionally with full knowledge of his constitutional rights. Therefore, he concluded, the second written confession did not constitute "fruit of the poisonous tree" under the *Wong Sun*[6] doctrine.

There was no showing that Harney was subjected to what the Supreme Court in *Miranda* described as "overt physical coercion or patent psychological ploys." 384 U.S. at 457, 86 S.Ct. at 1619. But *Miranda* requires the use of "adequate protective devices * * * to dispel the compulsion inherent in custodial surroundings." Id. at 458, 86 S. Ct. at 1619. The district court's conclusion that the statement to the FBI was voluntary and free of the taint of the earlier illegality was based at least in part on the erroneous conception that the earlier happenings had not been coercive. The written statement obtained by Slattery was violative of appellant's constitutional rights because it arose from what was as a matter of law coercive—custodial interrogation without constitutionally-required warnings.

In Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court made clear that prior custodial interrogation without proper warnings does not automatically make inadmissible subsequent in-custody statements given during interrogation after appropriate warning. Instead the facts and circumstances must be examined on an ad hoc basis to determine the existence of, and extent of, a causal relationship between on the one hand the earlier, unconstitutional[7] conduct (and the statement which is a product thereof if a statement was made) and on the other hand the statement made later. Evans v. United States, 375 F.2d 355 (8th Cir. 1967); United States v. Knight, 395 F.2d 971 (2d Cir. 1968); United States v. Pierce, 397 F.2d 128 (4th Cir. 1968); cf. Wong Sun v. United States, supra.[8]

In *Westover* the FBI was held to be the beneficiary of the earlier illegal interrogation by local officers, although there is no mention in the opinion of any confession given to the local police, and the crimes about which the local police and the FBI interrogated were different. In the instant case the interrogation by the local officers focused at an early stage on auto theft, each interrogation fed the next, and a full confession to auto theft was secured before the FBI became a participant. The statements elicited by the activity of the West Palm Beach officers resulted in notification of the FBI who were fed

---

6. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

7. Certainly the quality and depth of coercion is evidentiary on the issue of dissipation.

8. The instant case presents circumstances that this Court found not present in Jennings v. United States, 391 F.2d 512 (5th Cir. 1968), where the initial warnings were adequate, and it requires us to reach the problem not reached in Lathers v. United States, 396 F.2d 524 (5th Cir. 1968), where the FBI warning given before the last interrogation was found insufficient.

the specific fruits of the local activity. Then the FBI began its investigation of an auto theft offense.

Pretermitting the interrogation by Officer Hill at the scene of the stop and arrest, approximately eleven hours elapsed between the interrogations by Matthews and the commencement of the FBI interrogation. In that time appellant was questioned once by Matthews and twice by Slattery. He had given one full oral and one full written and signed confession.[9] All the interrogation took place in the same police headquarters building though not in the same room. Each interrogation drew from its predecessors.

After the full oral confession was obtained, appellant was told the FBI agent was coming. When the agent did arrive he was told what appellant had said. The agent commenced his interrogation "armed with defendant's earlier admissions." United States v. Pierce, *supra*, 397 F.2d at 131.

Agent Barron gave a sufficient warning, but, as the Supreme Court said in *Westover*, "despite the fact that the FBI agents gave warnings at the outset of their interview, from Westover's [Harney's] point of view the warnings came at the end of the interrogation process." 384 U.S. at 496, 86 S.Ct. at 1638.

Appellant signed an FBI "waiver of rights" form prior to giving the statement that was admitted at the trial.[10] The execution of such a form, like other circumstances, is only evidentiary on the ultimate issue of dissipation.

■ We conclude that when appellant reiterated to the FBI agent what he already had told twice, and one of those times in writing, the effects of the ear-

lier invalid interrogations and statements had not been sufficiently dissipated, and the FBI agent was the direct beneficiary of the illegal conduct of the local police. The statement given him should not have been allowed into evidence at the trial. Westover v. United States, *supra*; United States v. Pierce, *supra*; Evans v. United States, *supra*; Rogers v. United States, 330 F.2d 535 (5th Cir.), *cert. denied*, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964).

Reversed and remanded.

9. We do not consider it determinative whether appellant signed the confession for Slattery between 1:40 p.m. and 3:15 p.m., or whether he signed it at 10:40 a.m. and then went to the cell and remained there until FBI Agent Barron arrived.

10. The form said:
   I have read this statement of my rights and I understand what my rights

are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.