Eddie Huless GILPIN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 26172.

United States Court of Appeals
Fifth Circuit.

Sept. 9, 1969.

George B. Azar, Montgomery, Ala., court appointed, for appellant.

Ben Hardeman, U. S. Atty., Montgomery, Ala., Lawrence P. Cohen, Atty., Dept. of Justice, Fred M. Vinson, Jr.,

Asst. Atty. Gen., Jerome M. Feit, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

WISDOM, Circuit Judge:

*Miranda* requires, as a minimum, that law enforcement officers give certain specific warnings to an accused before a confession may be deemed voluntary.[1] Failure of the interrogating officers to give all of the *Miranda*-bundle of warnings will destroy the voluntariness of the confession. The courts must therefore dissect a custodial warning to see if all parts are present, properly composed, and add up to adequate notice of an accused's pre-confession right. Here, failure of a police officer to warn an accused that he is entitled to an attorney during an interrogation compels the holding that the confession was involuntary—although the defendant confessed no less than three times to the crime for which he was indicted and convicted.

## I.

(1) Gilpin was arrested and charged with public drunkenness on February 2, 1968, in Montgomery, Alabama. At the City Jail where he was taken he was "staggering" and "his speech was slurred". While being finger-printed, he indicated a desire to discuss something with one of the arresting officers.[2] He then blurted out that he had stolen a United States mail bag, a violation of 18 U.S.C. § 1708.[3]

(2) The officer informed his superiors of Gilpin's unsolicited confession. A formal interrogation took place the next morning. Gothard, a Montgomery police detective, Davis, a postal inspector, and a security official of the Louisville and Nashville Railroad were present at the morning interrogation. Detective Gothard read the following warning to Gilpin:

> Before asking you any questions, I must explain to you that you can remain silent, that anything you say can be used against you in a court, that you can talk to a lawyer first and that you have the right to the advice and presence of a lawyer even though you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if you go to court. If you want to answer questions now, you can do so but you can stop answering at any time.

Gilpin signed a statement that contained this warning and agreed to waive his rights to silence and to legal advice. Gilpin then repeated the substance of his earlier confession.

(3) Sometime after the detective read his warning to Gilpin,[4] the postal inspec-

---

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
2. Appellant urges that a duty arose at this point to warn him of his constitutional rights. We do not agree. In the circumstances present here, the officer could not have suspected that appellant was upon the verge of spontaneously confessing to a crime for which he was not arrested. The officer could have expected that appellant was merely a loquacious drunk who needed to talk to someone. The evidence is uncontradicted that appellant was not a suspect in the theft of the mail bag and in fact, the officer did not even know such a crime had been committed.
3. This section reads in relevant part as follows:
   Whoever steals, takes, * * * from or out of any mail, post office, or sta-

tion thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter * * * any letter, postal card, package, bag, or mail * * *, or * * * Shall be fined not more than $2,000 or imprisoned not more than five years, or both * * *.

4. There is a conflict in the testimony concerning the length of time between the deficient police department warning and the one given by the postal inspector. Detective Gothard testified that he read the police department warning in the presence of Postal Inspector Davis. Gothard stated that the postal inspector's warning followed soon thereafter. On the other hand, Inspector Davis testified that he did not recall any warnings being read to appellant and that he was under the

tor handed Gilpin another warning, reading as follows:

> Before you are asked any questions you must understand your rights.
>
> (a) You have the right to remain silent.
>
> (b) Anything you say can be used against you in court.
>
> (c) You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
>
> (d) If you cannot afford a lawyer, one will be appointed for you if you wish.
>
> (e) If you decide to answer questions now without a lawyer present you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

Gilpin signed a waiver-statement containing this warning.

(4) A few days later, another postal inspector, Williams, questioned Gilpin about the mail bag theft. The questioning was necessary because Gilpin's earlier confession had indicated that the mail sack was stolen at a time when he was in jail. Before any questioning took place Williams read to Gilpin the same warning that Davis had given him several days earlier. Gilpin again signed the waiver statement, changing only the date of the theft from a specific date to "one night".

The trial court held that Gilpin's first, spontaneous confession was not the result of any prompting on the part of the police but was inadmissible because Gilpin "was intoxicated to the point that his will was overborne". The trial court, however, found that Gilpin's statements at the joint interrogation session and the later clarifying session were volun-

tary and admissible since they were made after proper *Miranda* warnings.

Gilpin was convicted by the jury and sentenced to three years imprisonment.

## II.

First, Gilpin contends that a defendant who is a stranger to criminal law processes cannot intelligently waive his right to counsel without having the advice of counsel. Undoubtedly, a lawyer is helpful in explaining the intricacies of criminal law and procedure, but we cannot say that in every instance a waiver of counsel is fatal when the defendant is not advised by a lawyer. The Supreme Court has greatly broadened the right to counsel,[5] but it has never repudiated its holding in Adams v. United States ex rel. McCann, 1943, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268, involving waiver of counsel at trial and the right to trial by jury. *Adams* held that the Constitution does not *require* that an accused have the assistance of a lawyer before waiving a constitutional right.

■ This Court has rejected the contention that *every* criminal defendant must have a lawyer at his side before he is questioned. A criminal defendant may intelligently waive the right to counsel without the assistance of counsel. Narro v. United States, 5 Cir. 1966, 370 F.2d 329, cert. denied, 1967, 387 U.S. 946, 87 S.Ct. 2081, 18 L.Ed.2d 1334; *cf.* Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. We adhere to the view expressed in *Narro*.

## III.

A. Gilpin attacks the adequacy of Detective Gothard's warning: "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, *if you go to court.*" This language did not indicate that Gilpin had a right to have an appointed counsel *during the inter-*

---

impression that the police warning had taken place before he arrived. He also understood that Gilpin had already confessed.

5. *See, e. g.,* Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694;

Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Powell v. Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158.

*rogation.* Indeed, a fair interpretation of the detective's statement is that Gilpin would be given a lawyer *only if he should go to court.* The defendant may have had the impression that a lawyer would be appointed only if he pleaded not guilty. In any event, the statement conveyed no notion that he was entitled to a lawyer then and there.

The Supreme Court has placed a heavy burden on the Government when it seeks to introduce statements taken without the presence of an attorney (Miranda, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d 694):

> If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.

■ This Court has stated that the words of a *Miranda* warning must not be subject to the construction that counsel will be available only in the future. The warning must "effectively convey to the accused that he is entitled to a government-furnished counsel here and now". Lathers v. United States, 5 Cir. 1968, 396 F.2d 524, 535; *see* Windsor v. United States, 5 Cir. 1968, 389 F.2d 530.

■ Gilpin had only a sixth-grade education. He signed the waiver and made his statement the morning after he was arrested for drunkenness. Apparent-ly his mental faculties were not functioning fully the "morning-after", since he confused the date of the mail robbery with the date he was in jail.[6] Keeping in mind the Supreme Court's admonition as to the heavy burden imposed on the prosecution to show an intelligent waiver of counsel, we are compelled to say that Detective Gothard's initial warning failed to convey to Gilpin that he was entitled to the appointment of an attorney "here and now". We hold therefore that the first warning failed to meet *Miranda* standards.

B. Our inquiry cannot stop here. The record indicates that Gilpin was given adequate *Miranda* warnings before his later confessions, but as the Supreme Court stated in United States v. Bayer, 1946, 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654, 1660:

> Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag.

The Supreme Court, however, in Westover v. United States 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, pointed out that when there are multiple confessions, the lack of a proper warning before the first in-custody statement does not necessarily render inadmissible statements during interrogation after appropriate warning. The facts and circumstances of each case must be examined to determine

---

6. We have already mentioned the confusion of dates by appellant. His mind was at least beclouded to the extent that he could not even remember events that supposedly occurred less than two weeks prior to the interrogation.

In Logner v. North Carolina, M.D.N.C. 1966, 260 F.Supp. 970, aff'd 4 Cir. 1968, 392 F.2d 222, a defendant who was not considered intoxicated enough to be arrested for public drunkenness was later arrested for driving while intoxicated. Although the defendant was given the full *Miranda* warnings on at least three occasions, the trial court excluded every statement he made at all interrogation sessions on the ground that his will was overborne by his excessive consumption of liquor. The time differential between the arrest and the subsequent formal confession in *Logner* and the instant case is not significant. We accept the testimony of the various government witnesses that Gilpin did not appear intoxicated on the morning after his arrest, but we must assume that there would be some impairment of an individual's mental faculties only fifteen hours after he was arrested and described as staggering and not appearing rational.

the existence and extent of a causal relationship between the earlier, unconstitutional conduct and the later statement.

This Court in Harney v. United States, 5 Cir., 1969, 407 F.2d 586, adhered to the Supreme Court's direction as set down in *Westover*. Harney had also made incustody statements and confessions on several occasions. Because he had not been given adequate *Miranda* warnings, the trial court suppressed earlier statements, including the first written confession. However, the trial court, admitted Harney's later confession after a proper *Miranda* warning had been related to him. This Court, in reversing the trial court, held that when the "appellant reiterated to the FBI agent what he already had told twice, and one of those times in writing, the effects of the earlier invalid interrogations and statements had not been sufficiently dissipated, and the FBI agent was the direct beneficiary of the illegal conduct of the local police". 407 F.2d at 590.

We are once again called upon to determine the existence and extent of a causal relationship between the earlier, unconstitutional conduct and the later statement.

In the circumstances of this case, we cannot say that the postal inspector's warning cured the defect in Detective Gothard's warning. The postal inspector's warning was not given orally; it was presented to Gilpin written on a card. Gilpin testified that he could read "some" of it. The record shows that the warning was given in a perfunctory manner without the slightest hint that it contained any information different from the one preceding it. Considered in this light, the words of the second warning could not have been "so clear that they distill all doubt" (Lathers v. United States, 396 F.2d at 535) that an attorney would be appointed "here and now".

The final confession, four days after the joint interrogation by the postal inspector and Detective Gothard, was so closely connected with Gilpin's earlier confession, that we cannot say that it was the product of free and unfettered choice. The second postal inspector "entered the fray armed with defendant's earlier admissions". Pierce v. United States, 4 Cir. 1968, 397 F.2d 128, 131. It came at what to Gilpin could seem only the end not the beginning of the interrogation process.

■ Here, as in *Harney*, Gilpin knew that "the cat was out of the bag". One confession led to another. The effect of the tainted confession was not dissipated by the time of the next confession. A belated adequate warning could not put the cat back in the bag.

## IV.

In view of our holding, we consider it unnecessary to discuss Gilpin's contention that *all* warnings were constitutionally defective in that he was never told that his first, spontaneous confession, made when he was intoxicated, could not be used against him.

We reverse and remand this case. If the government has substantial other evidence, it should make this fact known to the district court and retry this case promptly; otherwise, Gilpin must be discharged.

Reversed and remanded.