**UNITED STATES of America,**
**Appellee,**

v.

**Steven Lee TOBIN, Appellant.**

**No. 20119.**

United States Court of Appeals,
Eighth Circuit.

Aug. 21, 1970.

**1262**

Richard A. Knudsen, Lincoln, Neb., for appellant, and filed brief.

J. William Gallup, Asst. U. S. Atty., Omaha, Neb., for appellee, and filed brief; Richard A. Dier, U. S. Atty., was on the brief with Mr. Gallup.

Before MEHAFFY, GIBSON and BRIGHT, Circuit Judges.

GIBSON, Circuit Judge.

Defendant Steven Lee Tobin was found guilty of a Dyer Act violation, 18 U.S.C. § 2312, in a jury trial and was sentenced under the Federal Youth Correction Act, 18 U.S.C. § 5010(b).[1] His principal contention on appeal is that the District Court erred in admitting an exculpatory statement made by the defendant at the time the car was stopped by a police officer for an outdated license check, a similar statement repeated at the police station, and other statements later made to FBI agents. We affirm.

The defendant, age 19, and his wife, age 20, were traveling through North Platte, Nebraska, with another couple on March 13, 1968, when the car they were using was stopped because it carried an outdated California license plate. The defendant, who was driving at the time, produced on request an auto registration which appeared questionable as the signatures were not notarized and the signatures of the previous owner and the defendant's were similar. Defendant, on being asked by Officer Mowers where he obtained the car, replied that it was a wedding gift from a named person. The officer then asked the group to follow him to the police station to check out the matter. The defendant readily complied. At the police station, in an approximate 20-minute conference with Sergeant Hill, the defendant repeated his story that the car was a a a wedding gift. He and his wife were told they could leave but could not have the car until a computer check had been completed on stolen automobiles. Defendant elected to remain at the station, remarking that he wanted to find out if the car were stolen. No *Miranda* warnings were given to the defendant at the time the car was stopped nor at the conference at the police station. At 6:30 p. m. that same day information was received that the car had been reported stolen. The defendant and his wife were then booked for possession of a stolen automobile. The FBI was notified and two of its agents interrogated the defendant and his wife the following day. *Miranda* warnings were given to the defendant, who refused to sign a statement but said he would answer the questions he wanted to. Both defendant and his wife repeated their story that the car was a wedding gift from Dennis Grubbs, and defendant made a number of conflicting statements relating to where the gift was made, to his relationship with Grubbs, to circumstances surrounding the acquisition of the car in California, and to his later trial testimony that the car was received in payment of a loan made to Grubbs.[2]

---

1. A youth offender committed under § 5010(b) shall be released conditionally under supervision on or before the expiration of four years from the date of conviction and shall be discharged unconditionally on or before six years thereof under § 1517(c). Previous to this commitment under § 5010(b), the defendant was committed under § 5010(e) for observation and study.

2. The evidence showed that the owner of the car had been deprived of its possession by the concerted action of the de-

The trial court, the Honorable Robert Van Pelt, held a plenary hearing on the defendant's motion to suppress the statements that he and his wife had made on the ground that their Fifth Amendment rights against self-incrimination were violated.[3] The motion was denied. The court held that the challenged statements were voluntarily made and all warnings were given that were necessary to be given.

■ Tobin specifically contends that his exculpatory statements to Officer Mowers and Sergeant Hill, that the car was a wedding gift from Grubbs, were obtained as a result of custodial interrogation in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). We view the statements made to Officer Mowers when the officer stopped the car for a routine license check as being voluntarily given. This clearly was not a custodial interrogation nor was Tobin at that time under any restraint. As noted in *Miranda:*

> "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 U.S. at 477–478, 86 S.Ct. at 1629. (footnote omitted).

This same statement now complained of by Tobin was merely repeated at the police station to Sergeant Hill. Tobin at that time was not in custody nor had he been charged or accused of any offense, and according to Sergeant Hill, Tobin could have left at any time as there was no evidence upon which to hold him for any offense. Nothing more was said to Sergeant Hill than was originally communicated to Officer Mowers about the origin of the title to the car.

■ Numerous cases have held, since the *Miranda* decision, that information elicited in the course of a routine investigation from a suspect, who was not at that time under arrest because of the lack of probable cause, is admissible at the trial if it was voluntarily given. (We have already noted that the trial judge held a plenary pretrial hearing on the issue of voluntariness, and his conclusion that the statements were voluntary is more than adequately supported by the record.) It is significant to note that many of these cases involved an initial detention and investigation because of suspicious circumstances surrounding use of an automobile. See Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476, 404 F.2d 1335 (1968); United States v. Gibson, 392 F.2d 373 (4th Cir. 1968); United States v. Scully, 415 F.2d 680 (2d Cir. 1969); Doran v. United States, 421 F.2d 865 (9th Cir. 1970); State v. Creach, Wash., 461 P.2d 329 (1969); People v. Yukl, 25 N.Y.2d 585, 307 N.Y.S.2d 857, 256 N.E.2d 172 (1969).

The primary question involved in the foregoing cases was the same as the one here in issue—were the suspects in "custody" at the time of the investigation? This obviously is primarily a factual issue and circumstances will vary to a considerable extent in every case. In some of the above cases, the questioning took place outside the police station in locations where the suspects were found, often, as in this case, where a car was stopped for motor vehicle violation. *E. g.* United States v. Gibson, *supra.* In

---

fendant and his wife and Grubbs, by Grubbs giving an unauthorized check on the defendant's joint account. This account had been closed. The defendant denied that he knew that Grubbs had given a bad check on his joint account, but the jury in assessing credibility found that the car was stolen and that defend-

ant knew it was stolen while transporting it in interstate commerce. This finding is clearly supported by the record.

3. The defendant and his wife were indicted separately for the same offense and their cases were consolidated for purposes of trial.

other cases, even where the questioning took place in the station itself, no custody was found. *E. g.* United States v. Scully, *supra.* In view of the wide range of factual situations which may arise, no definitive statement of what constitutes "custody" may be made, but we think the recent statement of the Second Circuit adequately sets out a test which encompasses the present case:

" * * * [I]n the absence of actual arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so." United States v. Hall, 421 F.2d 540, 545 (2d Cir. 1969).

Here the defendant was subjected to only about 20 minutes of questioning immediately following the time he arrived at the station. After that time, he was told he was free to leave, and when he elected to stay, the officers went about their business. They questioned him no further and often left him in the main room of the station without any supervision whatsoever. So far as the record reveals, there was no obstacle to his leaving, and according to his own testimony, he stayed voluntarily. We conclude that the statements made by the defendant to the local police were not the product of "custodial interrogation."

The Government also raises the issue that if these statements were inadmissible the error was harmless. We do not think it necessary to explore this contention for the reasons stated above.

■ Following the receipt of the stolen car report, the defendant was arrested and jailed that evening, and interrogated by the FBI the next day. Proper *Miranda* warnings were given prior to this interrogation, which is of course clearly custodial. The testimony given by the FBI agents about this interrogation was very damaging to the defense because the statements defendant made were highly contradictory, which had an impeaching effect, and because some of them went to the substantive proof of intent. The defendant contends that this testimony should have been excluded because it was "tainted" by the prior statements made to the police without *Miranda* warnings.

The case most nearly in point on this issue is United States v. Pierce, 397 F. 2d 128 (4th Cir. 1968). In that case the accused's car had been stopped for investigation of a savings and loan robbery, and he was taken to the stationhouse for interrogation of that crime. As it turned out, he had nothing to do with the robbery; but because of certain suspicious circumstances in his conduct, including the concealment of his identity, the interrogation was continued without *Miranda* warnings, evidence was uncovered of a Dyer Act violation, and the accused made certain admissions to the police. He was then turned over to the FBI, who administered *Miranda* warnings, and he made the same admissions in that interrogation. A divided court held that since the original admissions to the police were inadmissible, the subsequent admissions to the FBI were "tainted" and therefore also inadmissible even though the *Miranda* warnings were given. There are three factors which distinguish the *Pierce* case from this one.

First of all, it is well to remember that the basic underlying issue in this area is whether the statements made were voluntary. In *Pierce*, even though proper warnings were given prior to the subsequent interrogation, the court felt that the statements were not voluntary because the accused knew that he had already made damaging admissions in the prior interrogation and therefore might as well go ahead and make the same statements again. The problem is an old one and was set out by the Supreme Court in United States v. Bayer, 331 U. S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1946):

"Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psy-

chological and practical disadvantages of having confessed. He can never get the cat back in the bag."

See Gilpin v. United States, 415 F.2d 638 (5th Cir. 1969). But here the cat was not out of the bag. The accused had made no prior damaging statements at the time of the FBI interrogation, indeed, had made no statements at variance with his interests either then or at the time of the trial. Thus no element of psychological involuntariness negating the effectiveness of the *Miranda* warnings is present here.

Secondly, in *Pierce* the suspicious circumstances which prompted the FBI interrogation was evidence generated solely from the prior interrogation without warnings. Here the evidence which led to the FBI interrogation was not even in part derived from a prior interrogation, but was the independently obtained evidence of the improper registration, the outdated license plate, and the stolen car check.

Finally, in *Pierce*, the prior statements were inadmissible because they were improperly obtained while the accused was in custody. In the instant case the prior statements were admissible as they were not obtained while the accused was in custody.

We conclude that the testimony of the FBI agents was properly admitted in this case.

■■■ The defendant also contends that the sentence was excessive and constitutes an abuse of discretion. Defendant complains of the more lenient treatment accorded his wife who was placed on probation as contrasted with his indeterminate sentence of up to six years under the Federal Youth Correction Act. We view this contention as frivolous. The trial judge had the benefit of pre-sentence reports and other analytic reports on defendant's condition. Ordinarily a sentence within the period specified in the statute cannot be attacked as excessive. Gurera v. United States, 40 F.2d 338 (8th Cir. 1930); Heath v. United States, 375 F.2d 521 (8th Cir.

1967); Johnson v. United States, 126 F.2d 242, 251 (8th Cir. 1942). The defendant cites cases from other circuits dealing with this problem, particularly as relating to sentences received upon a retrial to which a different view is taken under certain circumstances. These cases have no application to defendant's situation.

Judgment affirmed.