**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bernard STEWART,
Defendant-Appellant.**

**No. 77–5703**

**Summary Calendar.**[*]

United States Court of Appeals,
Fifth Circuit.

July 5, 1978.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Before BROWN, Chief Judge, COLE-MAN and VANCE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Bernard Stewart was convicted by a jury of burglarizing a Federal Credit Union in violation of 18 U.S.C.A. § 2113(a). He was given a three-year sentence. Stewart appeals from the denial of a motion to suppress a confession he signed after having been given incomplete *Miranda* warnings. That confession, read in full to the jury after two timely objections, contained not only a step-by-step account of the burglary, but also an admission of a prior conviction for armed robbery. We reverse.

*Suppression Hearing And Trial*

The suppression hearing was held just before the trial began. Agent Worochock of the Office of Naval Intelligence, who had conducted the interrogation and had typed the confession, testified to the circumstances under which Stewart's statement was recorded.[1] Asked if Stewart was free to go during the interrogation, Worochock said, "No." Tr. 42.[2] The confession read in part as follows:

> I, Bernard Stewart . . . have been advised by Special Agent . . . Worochock . . .
>
> (1) That I have the right to remain silent and make no statement at all;
>
> (2) That any statement I do make may be used as evidence against me in a Court of Law;
>
> (3) That I have the right to consult with a lawyer, if I desire;
>
> (4) That I have the right to have my lawyer present during this interview; and

Theodore J. Sakowitz, Federal Public Defender, Joel Kaplan, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., C. Wesley G. Currier, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

1. During the burglary, an alarm had been tripped and the building was surrounded by police. Stewart and his juvenile accomplice were apprehended inside the building a few hours later.

2. According to Worochock, Stewart had been handcuffed and was under detention but had not been arrested. He was kept under watch by an agent who did not participate in the questioning. Tr. 41–42.

(5) That I am not in custody, and that I am free to leave or terminate this interview at any time.

Stewart initialed each numbered item. It is undisputed that he was never advised that he had a right to have an attorney present during the interrogation and that counsel would be appointed for him before the hearing if he was unable to afford one.[3]

At the conclusion of the testimony, the District Court, in denying the motion to suppress, stated:

> . . . Gentlemen, *I don't really want any argument. I think I am relatively familiar with the controlling law.*
>
> The Court finds that the warnings required by Miranda were given; that the defendant *knowingly* and *intelligently waived* his privilege against self-incrimination and to have an attorney present; that he *voluntarily* and *intelligently waived his rights to have* retained or *appointed counsel present at any interrogation* and that any statement or confession made by him was freely and voluntarily given. . . .

Tr. 44 (emphasis added).

Agent Worochock thereafter testified before the jury during the government's case-in-chief. As government counsel proposed to publish[4] the confession to the jury, this exchange occurred:

> MR. KAPLAN: Your Honor, I would object to the introduction of the statement *on two grounds.*
>
> I would like to approach the Bench.
>
> THE COURT: I am going to overrule the objection, and I am going to admit the document in evidence as Government's Exhibit No. 1, and permit counsel, if he wishes, to publish it to the jury.

Tr. 56 (emphasis added).

As Worochock was reading the confession to the jury, the following transpired:

[WOROCHOCK]: " * * * The crowbar, screwdriver, cloth sack and money from the cash box have been recovered from the room where he [Stewart's accomplice] and I were hiding.

"I was convicted—"

MR. KAPLAN: Objection to the publication of the next sentence.

THE COURT: Overruled.

A "I was convicted and sentenced for armed robbery in Key West during 1975. As a result of that conviction I served fifteen months in Lake Butler, Florida, penitentiary.

"I have read, understand, and initialed all corrections in the foregoing statements, which consist of two typewritten pages, typed in my presence and at my request by Mr. Worochock, and swear that it is true and correct to the best of my knowledge and belief." /s/ Bernard Stewart.

THE COURT: Just a moment, please.

Ladies and gentlemen, that part which the agent read about this defendant's prior conviction has nothing whatsoever to do with his guilt or innocence in this particular case. And so, in determining that, you are to disregard it. It has evidentiary value only if the defendant should take the stand. If he takes the stand and testifies, then it is a matter which affects his credibility. Otherwise, in arriving at your decision as to his guilt or innocence in this particular matter, you are to disregard that prior conviction.[5]

### Double Whammy

In *Miranda v. Arizona,* 1966, 384 U.S. 436, 472–73, 86 S.Ct. 1602, 1626–27, 16 L.Ed.2d 694, the Supreme Court discussed the necessity for ensuring that Fifth Amendment safeguards were made available to indigents:

---

3. [I]f police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation.

   *Miranda v. Arizona,* 1966, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694. Stewart was later found to be indigent and the Court appointed counsel to represent him.

4. A term frequently found in Southern District of Florida records which we understand to mean introduce in evidence.

5. Tr. 62–63. Stewart did not testify at the trial.

If an individual indicates that he wishes the assistance of counsel before any interrogation occurs, the authorities cannot rationally ignore or deny his request on the basis that the individual does not have or cannot afford a retained attorney. The financial ability of the individual has no relationship to the scope of the rights involved here. The privilege against self-incrimination secured by the Constitution applies to all individuals. The need for counsel in order to protect the privilege exists for the indigent as well as the affluent. In fact, were we to limit these constitutional rights to those who can retain an attorney, our decisions today would be of little significance. The cases before us as well as the vast majority of confession cases with which we have dealt in the past involve those unable to retain counsel. While authorities are not required to relieve the accused of his poverty, they have the obligation not to take advantage of indigence in the administration of justice. Denial of counsel to the indigent at the time of interrogation while allowing an attorney to those who can afford one would be no more supportable by reason or logic than the similar situation at trial and on appeal struck down in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).[6]

*Miranda* also established the rule that the warnings required and the waiver necessary to accord with its standards were "prerequisites to the admissibility of any statement made by a defendant." *Id.* at 476, 86 S.Ct. at 1629. "[U]nless and until such warnings . . . are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.* at 479, 86 S.Ct. at 1630.

It is true that the absolutism of the last-quoted statement has been somewhat diluted. In *Harris v. New York*, 1971, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, the Court held that statements given to the police without a warning that the defendant was entitled to appointed counsel could be used to impeach the defendant's direct testimony at trial. But the Court added, "*Miranda* barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel." *Id.* at 224, 91 S.Ct. at 645. *See also Oregon v. Hass*, 1975, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (inculpatory information, given after full *Miranda* warnings and defendant's request to call attorney, held admissible solely for impeachment purposes after defendant takes the stand and testifies to the contrary). In *Michigan v. Tucker*, 1974, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182, the testimony of a third party identified in defendant's exculpatory statement without a warning of his right to appointment of counsel if he was indigent was held admissible when the interrogation took place *prior to*, but the trial occurred after, the *Miranda* decision. Despite this dilution, we know of no case in which the Supreme Court has sanctioned the admissibility of a defendant's in-custody confession[7] during the

6. Footnotes deleted. The Court went on to state:

In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it.

*Id.* at 473, 86 S.Ct. at 1627 (footnotes deleted).

7. The government asserts that the questioning of Stewart was noncustodial. In view of Worochock's testimony that Stewart had been handcuffed, kept under watch and that he was not free to go, see note 2, *supra*, this assertion not only defies belief but adds convincing proof that the prosecutor was once again engaging in

government's case-in-chief in the absence of *full* warnings or a showing of effective waiver. Indeed, the Court in *Tucker, supra,* premised the holding in part on the fact—reemphasized several times—that the defendant's own statements had been properly excluded from evidence. 417 U.S. at 448, 449, 450, 451, 452, 94 S.Ct. 2357.[8] In this connection, see the post-*Miranda* case of *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311. There the Court reversed a conviction for murder when a police officer related to the jury during the government's case the defendant's incriminating statements which had been elicited by the police at the defendant's home without informing him of the rights to remain silent, to have a lawyer's advice before making a statement, and to have a lawyer appointed to assist him if he could not afford one.

Following *Miranda's* command, the Fifth Circuit—in a long line of cases—has reversed convictions when defendants' in-custody statements or confessions given in the absence of any one or all of the *Miranda* warnings have been admitted into evidence during a jury trial. *Fendley v. United States,* 5 Cir., 1967, 384 F.2d 923 (although defendant was informed of right to court-appointed counsel, he was not advised of right to have court-appointed counsel present during interrogation); *Windsor v. United States,* 5 Cir., 1968, 389 F.2d 530 (failure to advise of right to have a retained or appointed attorney present during interrogation); *Cook v. United States,* 5 Cir., 1968, 392 F.2d 219 (appropriate warning was not given, citing *Fendley, supra*); *Montoya v. United States,* 5 Cir., 1968, 392 F.2d 731 (failure to advise of right to have counsel provided before making the statements); *Chambers v. United States,* 5 Cir., 1968, 391 F.2d 455 (failure to advise of right to presence of retained or appointed attor-

ney during interrogation); *Lathers v. United States,* 5 Cir., 1968, 396 F.2d 524 (failure to advise of right to have attorney appointed and present before uttering a syllable); *Atwell v. United States,* 5 Cir., 1968, 398 F.2d 507 (failure to advise of right to counsel before and during interrogation); *Caparrosa v. Government of Canal Zone,* 1969, 411 F.2d 956 (failure to advise of right to have counsel present during interrogation); *Agius v. United States,* 5th Cir., 1969, 413 F.2d 915 (failure to give complete *Miranda* warnings); *Gilpin v. United States,* 1969, 415 F.2d 638 (failure to advise of right to have attorney during interrogation); *Sanchez v. Beto,* 1972, 5th Cir., 467 F.2d 513, *cert. denied,* 1973, 411 U.S. 921, 93 S.Ct. 1548, 36 L.Ed.2d 314 (failure to advise of right to presence of retained or appointed attorney at the interrogation). *See also Harney v. United States,* 5 Cir., 1969, 407 F.2d 586 (effects of earlier invalid interrogation after inadequate *Miranda* warnings by state authorities not sufficiently dissipated by subsequent full warnings by FBI); *United States v. Castellana,* 5 Cir., 1974, 500 F.2d 325, 327 (en banc) (statements by defendant prior to any *Miranda* warnings properly suppressed). As Judge Wisdom explained in *Gilpin, supra,* "[f]ailure of the interrogating officers to give all of the *Miranda*-bundle of warnings will destroy the voluntariness of the confession." 415 F.2d at 639.

■ In the present case, the warning given was more deficient than that given in *Fendley, supra,* where the defendant was told that if he could not afford an attorney, one would be appointed for him when he went to court. Thus *Fendley* and the other cases cited would ordinarily require reversal. The District Court's finding—made, ironically, after a downright refusal to hear

---

unthinking reflex opposition to anything the defense interposed.

**8.** For example:
More important, the respondent did *not* accuse himself. The evidence which the prosecution successfully sought to introduce was not a confession of guilt by respondent, or indeed even an exculpatory statement by re-

spondent, but rather the testimony of a third party who was subjected to no custodial pressures. There is plainly no reason to believe that Henderson's testimony is untrustworthy simply because *respondent* was not advised of *his* right to appointed counsel. *Id.,* 417 U.S. at 449, 94 S.Ct. at 2366 (emphasis in original).

legal argument—that Stewart "voluntarily and intelligently waived his rights to have retained *or appointed* counsel present at any interrogation" was obviously erroneous. As we stated in *Agius, supra,* the appellant of course "could not waive rights he knew nothing about." 413 F.2d at 916 n.1. On the record the Judge could credit there was not a stitch of evidence that Stewart knew or, for that matter, had ever heard from any source that he had these rights which the Judge declared as a *fact* he knowingly gave up.

But quite apart from the amazingly detailed confession of the crime for which Stewart was tried, the confession also contained an admission of a prior conviction for armed robbery. Rule 404(b), Federal Rules of Evidence, provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence that the accused committed a prior criminal offense is inherently dangerous because of the likelihood that prejudice to the defendant may result from confusing the issues by leading the jury to infer that since the accused has committed a similar offense, he must have committed the crime for which he is on trial. *United States v. Turquitt,* 5 Cir., 1977, 557 F.2d 464, 468. ■ Furthermore, evidence of a defendant's prior crimes is not rendered admissible because it was contained in a voluntary confession. *United States v. Stallings,* 5 Cir., 1971, 437 F.2d 1057; *Sang Soon Sur v. United States,* 9 Cir., 1948, 167 F.2d 431. *A fortiori* it could not be clothed with admissibility because it was born in a confession violative of *Miranda.* Stewart did not take the stand and thus neither his character nor credibility was placed in issue. The government does not seriously contend otherwise. Indeed, in a refreshing display of candor, the United States writes (brief at 9), "[t]he Government recognizes the impropriety of presenting to a jury evidence of prior crimes such as was contained in defendant's confession."

■ Rather, the government's position on the appeal with regard to the admission of this double-whammied confession is that because there was overwhelming evidence of guilt, the reading before the jury constituted harmless error beyond a reasonable doubt under *Chapman v. California,* 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. While cases of this Circuit recognize the appropriate application of the *Chapman* harmless error rule to *Miranda* violations [9] and to erroneously admitted evidence of prior crimes,[10] the harmless error rule is of no avail to the government here.

The United States has boxed itself into an anomalous corner. First, it states that there was overwhelming evidence of guilt (brief at 6), opining that "the defendant's confession was merely a statement of the obvious." Next, it refers to the "unfortunate inclusion of defendant's prior conviction." Brief at 9. Despite this apologia, it pleads *Chapman.* Had Stewart's confession really been a mere statement of the obvi-

---

**9.** *United States v. Hill,* 5 Cir., 1970, 430 F.2d 129 (harmless error rule applied in "no warnings" case where tried before court sitting without a jury); *Null v. Wainwright,* 5 Cir., 1975, 508 F.2d 340, *cert. denied,* 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (same); *Smith v. Estelle,* 5 Cir., 1975, 519 F.2d 1267, *rehearing granted in part,* 1976, 527 F.2d 430 (harmless error rule applicable to unlawful confessions not involuntary in the operational sense in *Escobedo,* pre-*Miranda* violation case); *United States v. Savell,* 5 Cir., 1977, 546 F.2d 43 (totally voluntary statement not affected by *Miran-*

*da,* even if erroneously admitted, held harmless beyond a reasonable doubt); *United States v. Ayo-Gonzalez,* 5 Cir., 1976, 536 F.2d 652, 655 (in atypical *Miranda* situation, assuming *arguendo* that testimony was erroneously admitted, error held harmless beyond a reasonable doubt).

**10.** *E. g., United States v. Turquitt,* 5 Cir., 1977, 557 F.2d 464, 471 (error held not harmless beyond a reasonable doubt); *United States v. Rice,* 1977, 550 F.2d 1364, 1372 (error held harmless beyond a reasonable doubt).

ous, the government's determination to gild the lily by introducing it despite the motion to suppress and the timely objections defies comprehension, particularly because the Government knew that the demonstrable failure to assure counsel was constitutionally deficient. Risking affirmance on *Chapman* grounds is risky business. *See United States v. Blair,* 5 Cir., 1972, 470 F.2d 331, 338, *cert. denied, sub nom. Crews v. United States,* 1973, 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 197 (Brown, C. J.).

But apart from this anomalous position, we have more important concerns here. We are faced with what was clearly a trial which disregarded fundamental notions of fairness. As detailed earlier, the Trial Judge refused to hear legal argument on the motion to suppress the confession. When the time came for its offer, the Judge overruled—without even permitting defense counsel to state his two grounds—the objection to the confession. And even after the witness had gotten Stewart's "I-was-convicted" words before the jury, and after defense counsel quickly objected a second time, the District Judge again overruled the objection without allowing counsel to state the basis for that objection.[11] Moreover, the Court's hopelessly tardy attempt to un-ring the bell, to put the cat back in the bag, to deodorize the jury box of the skunk's presence, and to unsing the song (quoted in text, *supra,* at note 5), may well have caused the jury to be suspicious of Stewart's failure to take the stand.

All things considered, the treatment Stewart received at the hands of the United States (which, under its approach, did not need the double-barreled confession) *and* the District Judge (who denied defense counsel on three separate occasions an opportunity to prevent the Court from straying down the path to reversible error) does not comport with our sense of justice or the Due Process Clause. Although we do not rest our result on the constitutional basis, we find this trial unacceptable to our re-sponsibility to exercise supervisory powers over the administration of justice in courts of this Circuit. See *United States v. Florea,* 6 Cir., 1976, 541 F.2d 568, 572. We cannot, as the government urges, allow the *Chapman* harmless error rule to be a Mon-day-morning-quarterbacking appellate vehi-cle that justifies ignoring the plainest re-quirements of established constitutional and procedural principles as though they did not exist. *See United States v. Candelaria-Gonzalez,* 5 Cir., 1977, 547 F.2d 291, 297–98.

*Miranda* has often been criticized as im-posing too rigorous a requirement on law enforcement officers who, with the prey almost in hand, fail in some phase of the on-the-spot liturgy of *Miranda.* But we do not face a situation involving the actions of the officers on the ground. To be sure, the investigating officer made a mistake, un-doubtedly a good faith mistake. But he could not commit the Government to pursue that mistake to the bitter end or to fore-close a means of correction. The prosecutor had to know that the *Miranda* warnings were critically deficient. And yet the Government persisted in offering the con-fession. We are forced to conclude that despite the Government's awareness of the palpable, nonexcusable violations of *Miran-da,* they presumed that this Court would excuse all with an admonition to go and sin no more. This would be the result of our finding harmless error.

We do not review here the untutored policeman in hot pursuit who commits an error of constitutional law. This is *the* Government, through its sophisticated, sup-posedly informed legal representatives, de-liberately imposing on the Trial Judge a position not necessary to the Government's case and for which—as the brief by the United States Attorney affirms—no legiti-mate basis existed.

Our distress over the proceedings below does not rest solely on these events. The Government's errors did not stop there.

---

**11.** It is unclear from the record whether the District Judge ever read the full confession before making these rulings. If he did not, he was guessing (badly) at the confession's con-tent and defense counsel's objections. If he did read it—a highly unlikely proposition—he was wrong on the law, especially if he thought *Chapman* could be used to de-fuse his rulings.

With the prosecutor and the witness obviously having the confession in hand, the Government, in the face of the gasping objections of defense counsel, proceeded to read to the jury a recitation of a prior crime. Again the Government proceeded as though indifferent to established rules of almost constitutional origin.

These Government tactics were made worse by the Trial Judge who would not listen to the earnest objections of defense counsel, cutting him off without even looking at the confession. The moment the Judge heard the awful words of the prior conviction he knew that this was not for the jury. And he told them so—after he overruled the objection to its publication. But alas!—this was not his role. The Judge had the duty to keep such information from the jury in the first instance.

The errors here were not of the constable on the beat. They were those of the office of the United States Attorney, whose adversary contentions and approach dragged the Trial Judge into flagrant errors. If under these circumstances all can be washed out by a finding of "harmless error," prosecutors will be encouraged to urge that Judges should allow them to take indefensible paths, confident that we will forgive if not forget.

A defendant who has had the sort of trial afforded here has not had the kind of hearing that we demand and that we cherish, no matter how overwhelming the indicia of guilt.

The conviction is reversed for a new, confessionless, and fundamentally fair trial.

REVERSED and REMANDED.