**STATE of Tennessee, Appellee,**

v.

**Terry Wayne PAINTER and Ronnie Lynn Valentine, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 13, 1981.

State's Permission to Appeal Denied as to *Painter* by Supreme Court March 23, 1981.

Kenneth A. Miller, Knoxville, for appellant Painter.

J. Anthony Brown, Knoxville, for appellant Valentine.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., William H. Crabtree, John W. Gill, Jr., Asst. Dist. Attys. Gen., Knoxville, for appellee.

## OPINION

SCOTT, Judge.

The appellants, Mr. Painter and Mr. Valentine, were each convicted of armed robbery and received life sentences in the penitentiary. Mr. Valentine was also convicted of aggravated assault and received a sentence of not less than four nor more than ten years in the state penitentiary, to run concurrently with the armed robbery sentence. Aggrieved by their convictions, they have appealed. The appellant, Mr. Painter, raises four issues for our review and Mr. Valentine raises three.

In Mr. Painter's first issue he questions whether it was error for the trial court to admit his oral confession, which was an affirmation of a prior written confession which the trial court suppressed because it was involuntarily given.

These convictions arose out of the armed robbery of a Wendy's Restaurant by one man armed with a sawed-off shotgun. The man escaped on a motorcycle driven by another man.

Receiving a radio dispatch concerning the armed robbery and the mode of escape, officers of the Knoxville Police Department spotted the motorcycle and gave chase. They ordered the cyclist to stop. In response, the passenger on the motorcycle turned and fired two shotgun blasts at the police car. The police returned the fire, and the motorcycle wrecked, skidding from under the riders. The motorcycle came to rest on top of Mr. Valentine.

At the hearing on the motion to suppress, Mr. Painter testified that he received a number of injuries. His knees were torn up; he had a sprained wrist; an ankle was hurt; an arm hurt; his knuckles hurt; his ribs hurt, and he had hit his head on the pavement. The men were taken first to the city jail and then to a hospital about five hours later.

Mr. Painter testified that he was advised of his rights after being placed in the police cruiser. He stated that he wanted a lawyer, but the officer told him that he did not need one. The officer told him that he would be taken to the hospital for treatment of his injuries and for treatment of his withdrawals from heroin if he'd make a statement. He testified that he persisted in his request for a lawyer.

This request was met by one officer, Arthur Randalls Brakebill, hitting him in the stomach and face a few times. Mr. Painter testified that Mr. Brakebill hit him in the groin, shins, and toes. He stated that he was also hit with telephone books, the heel of the officer's hands, and a slapjack wrapped in a shirt. He contended that this maltreatment bloodied his nose and lip. He further asserted that the rough handling continued for an hour or so.

Mr. Painter also testified that another officer, George Crawley, and Mr. Brakebill engaged in the good guy-bad guy interrogation technique, with Mr. Brakebill, quite obviously, taking the role of the bad guy.

Eventually Mr. Crawley gave up on the good guy role and held Mr. Painter while Mr. Brakebill sat in Mr. Painter's lap and stuck a lit cigarette to Mr. Painter's nostril.

Mr. Painter testified that between 1:00 and 2:00 A.M. he signed a statement confessing his guilt.

Mr. Brakebill, quite naturally, denied any abuse of Mr. Painter. He testified that Mr.

Painter's injuries were not serious at all, but consisted only of road burns from the motorcycle wreck. Mr. Brakebill did testify, however, that Mr. Painter was under the influence of narcotics, and that he faked passing out several times during the interview. Each time this would occur, Mr. Brakebill would give him a whiff of ammonia to revive him. The questioning would continue until Mr. Painter again passed out, and then he would revive Mr. Painter to continue the questioning.

At the conclusion of the hearing on the motion to suppress, the trial judge, obviously distressed by this police misconduct, sustained the motion. The trial judge sustained the motion on the basis of Mr. Brakebill's testimony that the statement was obtained as Mr. Painter was intermittently revived with ammonia. He did not accept Mr. Painter's version of the circumstances surrounding the giving of the written statement.

After court recessed at the end of the first day of trial, the state discovered for the first time that Mr. Painter had also given an oral confession five days later to Mr. George Hipshire, a detective with the Knox County Sheriff's Department. This second confession consisted of Mr. Hipshire taking the written statement which Mr. Painter had previously given and going over it line by line and getting Mr. Painter to reaffirm that this was in fact his statement. Mr. Hipshire then added his signature to the witnesses block of the written confession.

Mr. Painter testified that this reaffirmation never took place. He stated that Mr. Hipshire came to see him in jail but only to take photographs of him.

The trial judge ruled that the oral confession was admissible and it was presented to the jury.

The appellant relies on the "cat out of the bag" theory enunciated by the United States Supreme Court in *United States v. Bayer*, 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654, 1660 (1947), where the United States Supreme Court stated:

Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first.

Later, in *Westover v. United States*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that when there are multiple confessions an inadmissible first confession does not necessarily render inadmissible later statements that are not tainted. The facts and circumstances of each case must be examined to determine the existence and extent of a causal relationship between the earlier, unconstitutional conduct and the later statement.

In *Gilpin v. United States*, 415 F.2d 638 (5th Cir. 1969), Mr. Gilpin was interrogated after being given inadequate *Miranda* warnings. Four days later he was reinterrogated after proper warnings had been given. Judge Wisdom, writing for the United States Court of Appeals for the Fifth Circuit, held that:

The final confession, four days after the (improper interrogation), was so closely connected with Gilpin's earlier confession, that we cannot say that it was the product of free and unfettered choice. The second postal inspector 'entered the fray armed with defendant's earlier admissions.' (citation omitted) It came at what to Gilpin could only seem the end, not the beginning of the interrogation process.

Here, as in *Harney v. United States*, 407 F.2d 586 (5th Cir. 1969), Gilpin knew 'that the cat was out of the bag'. One confession led to another. The effect of the tainted confession was not dissipated by the time of the next confession. A belated adequate warning could not put the cat back in the bag. 415 F.2d at 642.

Over a hundred years before the flurry of activity over confessions prompted by the United States Supreme Court in *Miranda v.*

*Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and other cases, the Tennessee Supreme Court considered the effect that prior involuntary confessions have upon a questionable second confession.

In *Deathridge v. State*, 33 Tenn. (1 Sneed) 75, 80 (1853), it was held that the involuntary influence exerted to acquire the first confession is presumed to carry over to the later confession until the contrary is made to appear. The *onus*, in this respect, is upon the state.

Our Supreme Court elaborated further in *Strady v. State*, 45 Tenn. (5 Cold.) 300, 309 (1868), where the court held that after an improper confession is obtained, a subsequent confession may be admitted "if the Court believes, from the length of time intervening, or from proper warning of the consequences of confessions, or from other circumstances, ... that the delusive hopes or fears, under the influence of which the original confession w(as) obtained, were *entirely repelled*." (emphasis added)

The state insists that there was no "carry over effect" or "causal relationship" because the two confessions were given five days apart when Mr. Painter was no longer under the influence of drugs.

We hold that the second confession, which consisted only of a reaffirmation of the statements in the written confession, was directly caused by the first confession. A more clear causal relationship is hard to imagine. The cat was out of the bag. The first confession obviously led to the second. The effect of the tainted confession was not dissipated by the time the second confession was given, even though Mr. Painter no longer suffered from the effects of drugs. Since the state has failed to overcome the presumption that the second confession was the product of the illegal influence exerted by the officers to acquire the first confession, we cannot say from this record that the influence of the original confession has been entirely repelled.

The second oral confession should, like the first written confession, have been suppressed. The failure to do so was error. The judgment against the appellant, Mr. Painter, is, therefore, reversed and remanded for a new trial.

Next, the appellant questions whether he was prejudiced by the failure of the state to inform him prior to trial about the existence of the alleged oral confession. This issue is moot in view of our action on the first issue.

Next, the appellant questions whether the state can introduce a co-defendant's statement implicating the defendant when the co-defendant does not testify.

■ Clearly, interlocking confessions by nontestifying co-defendants can be introduced if both confessions are properly admissible. *Parker v. Randolph*, 442 U.S. 62, 75, 99 S.Ct. 2132, 2140, 60 L.Ed.2d 713 (1979).

■ However, in this case, Mr. Painter's confession was improperly admitted. Therefore, the interlocking confession of the co-defendant, Mr. Valentine, could not be properly admitted against Mr. Painter. On remand, this confession will not be admissible.

■ Finally, Mr. Painter questions whether the evidence was sufficient to support the conviction and the life sentence imposed. Since this case must be reversed and remanded as to Mr. Painter, we will not directly address the sufficiency of the convicting evidence as to him.

In his first two issues, Mr. Valentine questions the sufficiency of the evidence. The proof showed that at approximately 10:00 P.M. on July 5, 1979, a man with a patch over one eye, wearing a white motorcycle helmet with the word "Bell" on the front, came into Wendy's Restaurant. The man had an arm in a sling, from which he produced a sawed-off shotgun. Pointing it at the cashier, he directed him to put the money from the cash register into a pillowcase. The cashier complied.

Another employee who observed the armed robbery saw two people leave on a motorcycle going northbound on the Maynardville Highway.

Police were notified and a radio broadcast went out concerning the motorcycle. Mr. Brakebill and Mr. George Crawley, detectives with the Knoxville Police Department, spotted the motorcycle and gave chase. The passenger on the motorcycle, as previously recounted, fired at the police car after an order to stop had been given. The passenger reloaded the shotgun and fired again at the pursuing policemen. The officers returned the fire. When they did so, the driver of the motorcycle accelerated sharply, opening the throttle "wide open". When he did so, the motorcycle ran out from under its riders, who went sliding down the highway. The motorcycle, as previously recounted, landed on top of Mr. Valentine and Mr. Painter fled, but was quickly caught.

Both Mr. Valentine and Mr. Painter were positively identified as being the men on the motorcycle. The pillowcase containing $52.50 was positively identified by the cashier, as was the gun, helmet, and the patch which Mr. Valentine had over his eye. Another Wendy's employee positively identified the helmet from the word "Bell" written across its front, and also from its scratched-up condition. The manager of Wendy's who observed the holdup also positively identified the helmet and the pillowcase. Mr. Valentine confessed his participation.

Even if Mr. Valentine had not confessed, there was ample, indeed overwhelming, proof from which a rational trier of fact could determine that the appellants were guilty beyond a reasonable doubt. Rule 13(e), T.R.App.P., *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). These issues have no merit.

Finally, Mr. Valentine further contends that the extreme length of the sentences he received constitute cruel and unusual punishment, in violation of the Eighth Amendment of the Constitution of the United States, and Article I, Section 16, of the Constitution of Tennessee.

The punishment for robbery with a deadly weapon at the time of this offense was "imprisonment for life or for any period of time not less than ten (10) years". TCA, § 39–3901. Since the appellant's life sentence falls within the limits prescribed by statute, it does not violate the constitutional prohibition against cruel and unusual punishment. *Hardin v. State*, 210 Tenn. 116, 355 S.W.2d 105, 115 (1962). This issue has no merit.

Finding one of Mr. Painter's issues to be meritorious, the conviction is reversed and his cause is remanded for a new trial. Finding no error in the conviction of Mr. Valentine the judgment in his case is affirmed.

O'BRIEN and CORNELIUS, JJ., concur.