THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GREGORY L. SHEPARD, Defendant-Appellant.

Second District    No. 79-686

Opinion filed May 11, 1981.

Mary Robinson and Marilyn Martin, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HOPF delivered the opinion of the court:

Gregory Shepard was charged by information with the offense of rape (Ill. Rev. Stat. 1977, ch. 38, par. 11—1) and deviate sexual assault (Ill. Rev. Stat. 1977, ch. 38, par. 11—3). Upon a jury trial, the defendant was found to be guilty as charged. Judgment was entered on the verdict and the defendant was sentenced to serve a term of confinement in the Illinois State penitentiary of 15 years.

The defendant raises three issues on appeal. First, whether the admission of defendant's confession was reversible error for violation of the principles of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; secondly, whether the trial court erred in not fully instructing the jury on defendant's failure to testify to matters other than the circumstances of his confession; and thirdly, defendant asserts he was denied a fair trial because of an improper question asked by the prosecutor creating an inference of the commission of another crime.

On the night of January 19, 1979, the victim left a bar to walk home, a distance of four blocks. A car pulled up and the driver asked if she wanted a ride. She said no and walked away but was approached by the driver who brandished a knife in front of her face and put her in the car. After driving some distance to a parking lot and stopping the car, the driver told her to remove her clothes. The victim refused and grabbed the knife that had been placed on the dashboard. A struggle ensued and the victim was cut on the finger. The driver regained the knife and placed it on the victim's throat threatening to kill her. The driver subsequently committed acts of oral and vaginal intercourse.

While driving, the driver told the victim that he had attended Waukegan East High School. When she arrived back at the tavern she told a friend that she had been raped by a black man with a knife. The friend took her home, the police were contacted and she was transported to the hospital.

The victim testified that when she got home her checkbook was missing and had apparently fallen out of her purse. She described her assailant as having a short Afro haircut, being about 19 or 20 years old, about 5 feet 10 inches tall and as having pockmarks on his face. At the motion to suppress statements hearing, it was revealed that the defendant was stopped in his green Gremlin vehicle on January 24, 1979, pursuant to a warrant for the driver's arrest. He was placed under arrest and transported in a squad car to the Waukegan police station. The officers testified that Officer Miscichowski had advised defendant of his rights

while in the back of the squad car and heard him respond after the rights were given, although the defendant's response was mumbled.

During an inventory search at the station a piece of paper bearing the name, address and phone number of the victim in this case was removed from defendant's pocket. The officers asked the defendant about the piece of paper and the defendant stated that he got the name out of a checkbook. The officers testified that at the same time he requested that they let him go home and he "promised not to do anything anymore."

Approximately two hours after the search the defendant was taken to an interrogation room and read each right from the waiver of rights form. The defendant replied to each of them in the affirmative and stated that he understood each of the rights. Defendant was given the form, appeared to read it, and signed it. Officer Bullock testified that the defendant asked no questions and did not request an attorney or refuse to execute the waiver form.

After the statement was prepared, the officers asked Shepard a further question which they had omitted from the formal interrogation in which the defendant stated that he had placed the victim's checkbook on the steps of her home. This response was recorded in a supplemental police report. Bullock testified that Shepard did not request an attorney, a phone call or family member at the time he gave the statement, and that he was not subjected to threats or promises. Officer Miscichowski testified that he advised the defendant of his rights from memory while in the squad car and that the defendant mumbled a response which he did not understand. At the station Officer Miscichowski found a piece of paper bearing the name of the victim and her address and phone number which he placed in evidence. He could not recall whether any question was asked the defendant about the paper but stated that the defendant probably saw it.

Officer Miscichowski corroborated Officer Bullock's testimony and stated that the defendant had told them the details of the case much as was described by the victim. He added that the defendant told him that when he found the checkbook with the name on it, he looked up the name in the phone book and copied the address and phone number on the piece of paper that was later found in his pocket at the station. Within a day or two after the 19th of January the defendant had telephoned the woman and identified himself as Ray, whereupon the female who answered the phone hung up.

After Miscichowski typed the statement, Shepard appeared to read it and then signed it.

Defense counsel moved to suppress the statement made by defendant and argued that no waiver of rights had been made when defendant was first questioned about the piece of paper found in his pocket. He

further argued that the subsequent confession was the fruit of the initial unlawful inquiry.

The defendant took the stand at the suppression hearing. His testimony varies widely from that of the State's. He stated he was never advised of his *Miranda* rights in the squad car on the way to the station, that he had asked for a lawyer but the officers did not respond, and that when the piece of paper with the victim's name on it was found in his pocket that he said that she gave it to him. He further denied saying that he wanted to go home and wouldn't do it anymore. When he was read the *Miranda* rights in the interrogation room he stated that he had asked for a lawyer but was told by the police that he could not have one. Defendant stated that he had signed the form and confession because Officer Bullock had placed a gun within 1½ inches from his face. He denied that he made any statement to the police before he was presented with the typed form. He stated he did not read the waiver portion on the form and did not know what "waiver" meant.

The motion to suppress the defendant's confession was denied and the trial court found that the confession was voluntarily given after adequate *Miranda* warnings.

At trial the victim testified that she initially identified her assailant from a Waukegan East High School yearbook.

On the night of the rape, the victim said that she thought that the defendant's car was an orange Gremlin with cloth seats. She testified that she was mistaken about this, possibly due to the lighting. It was revealed that the car was a green Gremlin with vinyl seats. The victim identified her checkbook and a brown barrette which was found in the defendant's car.

The prosecutor was instructed by the trial judge to warn the testifying officers that they were not to mention other offenses in which the defendant was implicated. Defense counsel made a motion in limine to exclude any mention of the person, not the victim in this cause, who had reported the defendant's license number. The prosecutor then asked Officer Miscichowski about the arrest warrant for Gregory Shepard as follows:

"Do you recall who the victim was in that case?"

The defendant objected, and his motion for a mistrial was denied. The officer replied that the victim named in that warrant was the same as in this cause. The remainder of Officer Miscichowski's testimony was substantially the same as that given at the suppression hearing. The defense produced testimony of Officer Holmes as to a misidentification by the complaining witness from a mug shot book.

The defendant, Gregory Shepard, took the stand for the limited

purpose of testifying as to the voluntariness of his confession. The defendant's motion for a directed verdict was denied.

At the instruction conference the defendant tendered Illinois Pattern Jury Instructions, Criminal, No. 1.01(6) combined with No. 2.04 (1968) (hereinafter cited as IPI Criminal). The court allowed a modified version of IPI Criminal No. 1.01(6). Defense counsel argued that the failure to include the additional language permitted improper inferences from defendant's failure to testify to matters other than the circumstances of his confession.

The first issue raised by the defendant urges that the trial court erred in denying defendant's motion to suppress the statements because defendant had not waived his *Miranda* rights prior to making the statement that he wanted to go home and would not do it again. He further argues a subsequent written confession was tainted by the earlier improper questioning.

■■ It is beyond dispute that defendant was in custody once he was transported to the police station booking room. Further, a valid waiver is not presumed from the silence of the accused after warnings are given but instead must be shown affirmatively on the record. (*Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602.) The record does not reveal an affirmative waiver by the defendant. For this reason we hold that the question asked was improper under the rules of *Miranda*.

■■ It is important to note that the statement made by the defendant in response to the officers' question was not introduced against him at trial by the State. The police officers limited their testimony to the physical act of finding the piece of paper. It was not until defense counsel brought out the defendant's statement on cross-examination from Officer Miscichowski that the evidence of the statement he wanted to go home was elicited, though the State did inquire about the statement on redirect examination. Defendant cannot now claim to have been prejudiced by the statement he originally elicited. *Cf. People v. Green* (1972), 9 Ill. App. 3d 280, 292 N.E.2d 65 (where an exculpatory statement was elicited by defense counsel on cross-examination and not used by the prosecution in any way).

■■ The question remains of whether the improper question and resulting statement tainted the confession given by defendant a few hours after his arrest. This issue was addressed in *Green* which held: " 'The facts and circumstances of each case must be examined to determine the existence and extent of a causal relationship between the earlier unconstitutional conduct and the later statement.' [Citation.]" 9 Ill. App. 3d 280, 285.

■■ In the case before us the defendant's own testimony at the suppression hearing gives no indication that the confession was the unattenuated

result of the initial statements. His testimony largely described the duress and lack of voluntariness caused by the presence of the officers' guns. These assertions were disbelieved by the court. Defendant made no claim there was any connection between the oral statement and the written confession. In fact, he testified that his only statement in response to the officers' question about the piece of paper was that "She gave it to me." He denied saying he wanted to go home and wouldn't do it anymore. On appeal he chooses to believe the officer's testimony that he did indeed make an inculpatory statement in response to questioning. In any event we conclude that the subsequent confession was not made as a result of the improper question.

The defendant urges that the question posed by the police evoked an inculpatory statement that "let the cat out of the bag" and that his decision to answer further questions could no longer be voluntary because the officers "entered the fray" armed with the defendant's statements about the piece of paper. We disagree. The fact that the police had the piece of paper and that it was in the defendant's possession when he was arrested is what the police were armed with. Police possession of the piece of paper, not the inquiry about it, is what "let the cat out of the bag." *People v. Andrus* (1976), 37 Ill. App. 3d 533, 346 N.E.2d 435.

The defendant has cited certain Federal cases (*United States ex rel. Williams v. Twomey* (7th Cir. 1972), 467 F.2d 1248; *United States v. Pierce* (4th Cir. 1968), 397 F.2d 128; *United States v. Henry* (5th Cir. 1979), 604 F.2d 908). We deem these to be distinguishable because each had a causal connection between improper police conduct and a subsequent confession.

From an examination of all the evidence relative thereto, we conclude that defendant's motion to suppress his confession was properly denied by the trial court.

Defendant argues as his second issue that the trial court improperly denied his requested jury instruction which merged IPI Criminal No. 1.01(6) with No. 2.04. The court did allow a modified version of No. 1.01(6).

■■ Defendant notes that the committee comments to IPI Criminal No. 2.04 state that the instruction must be given at the defendant's request. (*People v. Borneman* (1966), 66 Ill. App. 2d 251, 213 N.E.2d 52). However, this section was obviously intended for use when the defendant chooses to remain silent and does not testify. It is not required when, as here, the defendant takes the stand, even if for a limited purpose.

The defendant's instruction, which the trial court refused, stated:

"The fact that the defendant testified for a limited purpose, on a limited subject matter, should not be considered by you for any other purpose or as to any other subject matter; and the fact that

the defendant did not testify as to other matters should not be considered by you in any way in arriving at your verdict."

IPI Criminal No. 1.01(6) provides:

"Any evidence which was received for a limited purpose should not be considered by you for any other purpose."

IPI Criminal No. 2.04 provides:

"The fact that [a] [the] defendant[s] did not testify should not be considered by you in any way in arriving at your verdict."

The modified version that the court did allow read:

"The fact that the defendant testified for a limited purpose, on a limited subject matter, should not be considered by you for any other purpose or as to any other subject matter."

Defendant cites *People v. Borneman* (1966), 66 Ill. App. 2d 251, 213 N.E.2d 52. In *Borneman* the defendant did not testify and chose to remain silent; therefore this case is inapplicable. Defendant urges that he is being denied his right to challenge the voluntariness of his confession. We disagree and point out that the voluntariness of the confession was examined at the suppression hearing. Further, it is noted the State did not comment on the failure of the defendant to testify to other matters. We find no error.

■■ The third and final error assigned by defendant concerns an alleged improper question asked by the prosecutor of a State witness. The defendant failed to preserve this issue in his post-trial motion and it is thus waived on appeal. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.

The specific question that the prosecutor posed to the police officer was:

"PROSECUTOR: The particular warrant that you had for the offense of rape for the defendant's arrest, do you recall who the victim was in that case?"

Following discussion outside the presence of the jury, the prosecutor asked, "Do you recall the individual?" The witness responded by giving the name of the victim in this case.

Defendant urges this colloquy leads to the inference that the defendant had committed an offense other than that for which he was tried. We disagree. Even assuming the issue wasn't waived, the question asked, together with the response, is innocuous. The question posed by the prosecutor during the case before us cannot be said to have revealed the existence of another crime. We find no error.

Judgment of the circuit court of Lake County is affirmed.

Affirmed.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.